PEOPLE v MacLEOD

Docket No. 233793. Submitted November 5, 2002, at Lansing. Decided December 3, 2002, at 9:05 A.M. Leave to appeal sought.

Trevor K. MacLeod was convicted by a jury in the Cheboygan Circuit Court, Scott L. Pavlich, J., of resisting and obstructing police officers who arrested him for disorderly conduct under a municipal ordinance that forbids the disturbance of the public peace and quiet by loud, boisterous, or vulgar conduct. The defendant appealed.

The Court of Appeals *held*:

1. One element required for a conviction of resisting arrest is that the arrest must be lawful.

2. Regardless of the constitutionality of the ordinance, which the defendant challenged as being vague and overbroad, the arrest was lawful in that the evidence indicated that an arresting officer had probable cause to believe that an offense under the ordinance had been committed and that the defendant committed the offense.

3. The validity of an arrest is not affected by a subsequent judicial determination that the ordinance under which the arrest was made is unconstitutional.

Affirmed.

1. CRIMINAL LAW — RESISTING ARREST — ELEMENTS.

The elements of the crime of resisting arrest are the defendant resisted arrest, the arrest was lawful, the person arresting the defendant was an officer of the law at the time of the arrest, the defendant knew the person was an officer, the defendant knew the person was making an arrest, and the defendant intended to resist arrest (MCL 750.479).

2. CRIMINAL LAW — RESISTING ARREST — ORDINANCE VIOLATIONS.

The validity of an arrest for an ordinance violation, which arrest serves as the basis for a charge of resisting arrest, is not affected by a subsequent judicial determination that the ordinance is unconstitutional (MCL 750.749).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Catherine M. Castagne*,

Prosecuting Attorney, and *William E. Molner*, Assistant Attorney General, for the people.

State Appellate Defender (by *Debra A. Gutierrez-McGuire*) for the defendant.

Before: WHITBECK, C.J., and HOOD and KELLY, JJ.

KELLY, J. Defendant appeals as of right his jury trial conviction of resisting and obstructing a police officer (resisting arrest), MCL 750.479. The trial court sentenced him to eight months in jail, with the last four months held in abeyance. We affirm.

## I. BASIC FACTS AND PROCEDURAL BACKGROUND

This case arises from an incident that began with defendant and his friends out for a night of carousing. At some point during a stroll with a case of beer in their possession, one of defendant's friends, Justin Brasseur, stopped to urinate behind a wall while his friends waited for him on the sidewalk. Officer Ronald White noticed this activity and stopped. Officer White instructed the group on the sidewalk to continue walking and questioned Brasseur about his activity. The group on the sidewalk proceeded to walk away, but became boisterous. Officer White testified that defendant turned and yelled, "You f—ing pig." As the group proceeded on their way, they encountered several relatives and acquaintances who were also out that night. Some of the women requested that defendant accompany them to a bar for dancing. However, defendant and his friends crossed the street and began to walk in the opposite direction. Defendant and the women yelled back and forth across the street. Another man, Thomas Kortz,

joined in hollering and swearing across the street for defendant and his friends to join them. Both Kortz and defendant used the word "f—." A couple of men from the other side of the street yelled questions to defendant and his friends about what happened with the police. Someone from defendant's group yelled back that "the pigs" were "messing with" Brasseur.

Meanwhile, Officer White's partner, Officer Rick McNew, arrived in a separate vehicle. Officers White and McNew drove down the street to arrest defendant. Officer White walked up to defendant and told him he was under arrest. When defendant asked why he was being arrested, Officer White responded that he was being disorderly. Officer White testified that he had no reservations regarding whether defendant violated the disorderly conduct ordinance. As Officer White arrested him, defendant began swearing and swinging his left arm. Defendant also spit on Officer McNew, who grabbed defendant's left arm as the officers led him away from the crowd that had gathered. However, the crowd followed them. At one point, Officer White, unable to see Officer McNew, concluded that he had been pulled into the crowd. Officer White then became concerned and pulled defendant's feet from under him. Officer McNew reappeared and tried to restrain defendant's feet as defendant thrashed about. A woman grabbed Officer McNew's hair and a man yelled that the officers should release defendant. Officer White was struck in the face and fell backward, blacking out for a brief instant.

After Officer White revived, he and Officer McNew managed to restrain defendant and place him in the police vehicle. During the struggle, Officer McNew

called for backup, contacting Sergeant Michael Newman. When Sergeant Newman arrived, he saw several intoxicated people yelling at the officers.

At trial, Officer White testified that defendant was screaming, "You f—ing pigs," from a block away. Officer White could hear him "as clear as day." Officer White also testified, "My concern was who else could hear it." Officer White also testified, "I charged him under the disorderly code which has I believe twenty some statutes and I believe it was statute number ten for creating a disturbance in a public place." In response to a question about why he arrested defendant, when he had not arrested people in the past for swearing at him, Officer White responded, "Because it wasn't just the 'F You,' it was the voice that he used— the constant screaming a block away."

Although defendant's arrest sheet for the incident lists both resisting arrest and disorderly conduct, defendant was only charged and tried for resisting arrest. Before trial, defendant moved to dismiss the charge, arguing that the disorderly conduct ordinance under which he was arrested was unconstitutionally vague and overbroad. The trial court denied the motion to dismiss, holding that the ordinance included specific standards regarding what constituted a violation. At trial, the trial court did not instruct the jury regarding the elements of the disorderly conduct ordinance, but, rather, instructed that in order to fulfill the lawful arrest element of resisting arrest, the jury had to find that Officer White had probable cause to believe that defendant violated the disorderly conduct ordinance.

Defendant appeals his conviction, arguing that the lawful arrest element of resisting arrest was not satis-

fied because his arrest was unlawful based on the unconstitutionality of the disorderly conduct ordinance.

## II. STANDARD OF REVIEW AND RULES FOR CONSTRUCTION

Constitutional questions are reviewed de novo. *In re Hawley*, 238 Mich App 509, 511; 606 NW2d 50 (1999). Statutes are presumed to be constitutional unless their unconstitutionality is clearly apparent. *In re AH*, 245 Mich App 77, 82; 627 NW2d 33 (2001). Statutes must be construed as proper under the constitution if possible. *In re Trejo Minors*, 462 Mich 341, 355; 612 NW2d 407 (2000). The party opposing the statute bears the burden of overcoming the presumption and proving the statute unconstitutional. *Id.*; *In re AH, supra* at 82. This Court must consider the factual evidence in the light most favorable to the prosecution, *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000), and leave questions of credibility for the jury, *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999).

## III. ANALYSIS

The elements of the crime of resisting arrest are (1) the defendant resisted arrest, (2) the arrest was lawful, (3) the person arresting the defendant was an officer of the law at the time, (4) the defendant knew the person was an officer, (5) the defendant knew the person was making an arrest, and (6) the defendant intended to resist arrest. MCL 750.479; *People v Little*, 434 Mich 752, 755, n 5; 456 NW2d 237 (1990). A person may use reasonable force to resist an unlawful

arrest. *People v Wess*, 235 Mich App 241, 244; 597 NW2d 215 (1999).

Defendant challenges the second element, arguing that the arrest was unlawful. Specifically, defendant contends that he was justified in resisting arrest because he was arrested pursuant to a city ordinance that was unconstitutionally overbroad and vague.[1] At the time of the arrest, the disorderly conduct ordinance had not been held unconstitutional nor has it been since the time of the arrest. Thus, defendant urges us to address the constitutionality of the ordinance for the first time. However, because we hold that an arrest is not rendered unlawful if it is made pursuant to a law that is found unconstitutional after the arrest, we do not find it necessary to address whether the ordinance is unconstitutional. *People v Higuera*, 244 Mich App 429, 441; 625 NW2d 444 (2001).

### A. LAWFUL ARREST

We first consider whether the arrest was lawful regardless of the constitutionality of the ordinance. " '[W]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law.' " *Univ Emergency Services, PC v Detroit*, 141 Mich App 512, 519; 367 NW2d 344 (1984), quoting *Michigan v DeFillippo*, 443 US 31, 36; 99 S Ct 2627; 61 L Ed 2d 343 (1979). A custodial arrest is permitted if an arresting officer possesses enough information demonstrating probable cause to believe that an

---

[1] We note that even if we did find that defendant was permitted to use reasonable force to resist arrest, defendant makes no argument regarding whether his resistance constituted reasonable force.

offense has occurred and that the defendant committed it. *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996), citing MCL 764.15. "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.*

In this case, Officer White had probable cause to arrest defendant for disorderly conduct. The ordinance section pursuant to which defendant was arrested[2] provides:

No person shall:

\*          \*          \*

10. Engage in any disturbance, fight, or quarrel in a public place or encourage such activity; disturb the public peace and quiet by loud, boisterous or vulgar conduct or conduct himself or herself in any manner to disturb a meeting of municipal or public officials or allow any place, public or private, occupied or controlled by him or her to be a resort of noisy, boisterous or disorderly conduct. [Cheboygan, Michigan Code of Ordinances, § 20.062(10).]

Here, defendant was yelling "at the top of his lungs" in a continuous manner, in a public place. Officer White could hear defendant "as clear as day" from

---

[2] In support of our conclusion that Officer White arrested defendant pursuant to subsection 10 is Officer White's testimony, "I charged him under the disorderly code which has I believe twenty some statutes and I believe it was statute number ten for creating a disturbance in a public place." Additionally, defense counsel referred to subsection 10 during a hearing on defendant's motion to dismiss. We note that the ordinance has since been renumbered, but use the numbering in effect at the time of defendant's arrest.

down the street. In response to a question about why
he arrested defendant, when he had not arrested peo-
ple in the past for swearing at him, Officer White
responded, "Because it wasn't just the 'F You,' it was
the voice that he used—the constant screaming a
block away." Considering this evidence in the light
most favorable to the prosecution and leaving ques-
tions of credibility to the jury, Officer White had
probable cause to justify an arrest pursuant to the
ordinance.

### B. DETERMINATION OF UNCONSTITUTIONALITY POST-ARREST

Having determined that the arrest was otherwise
lawful, we next turn to the issue whether a subse-
quent finding that the ordinance is unconstitutional
would render the arrest unlawful. In *People v Hunter
(On Remand)*, 94 Mich App 50, 52; 287 NW2d 366
(1979), this Court, relying on *DeFillippo, supra*, held,
"The validity of [an] arrest is not affected by the sub-
sequent judicial determination that the ordinance is
unconstitutional."[3] In *DeFillippo*, the United States
Supreme Court held that a subsequent determination
that an ordinance is unconstitutionally vague does not
undermine the validity of the arrest made for violat-
ing that ordinance. In *DeFillippo*, the defendant was
arrested pursuant to a Detroit city ordinance permit-
ting a police officer to stop and question an individual
if the officer had reasonable cause to believe that the
individual's behavior warranted further investigation.
*DeFillippo, supra* at 33-34. The ordinance provided

---

[3] In *Hunter*, the defendant challenged the lawfulness of an arrest
because a search incident to the arrest uncovered contraband. *Hunter,
supra* at 51.

that it was unlawful for the person stopped to refuse to identify himself and produce evidence of his identity. *Id.* When the defendant was taken into custody, a search revealed contraband. *Id.* at 34.

Although *DeFillippo* involved the suppression of evidence discovered incident to a lawful arrest, the underlying issue is the same as that presented in this case: whether an arrest is unlawful if made pursuant to an ordinance that is subsequently found unconstitutional. The Supreme Court determined that, "[t]he answer is clearly negative." *Id.* at 37. The Court reasoned:

> Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement. [*Id.* at 38.]

The duties of police officers, who are members of the executive branch of government, do not extend to the analysis and determination of the constitutionality of laws. This function properly lies within the duties of the judicial branch of government. We recognize, however, that a police officer's duties include enforcing laws in good faith. Within the context of resisting arrest in particular, we note that public policy supports our decision. Public order is better served if a person, subject to an arrest pursuant to an existing law, challenges the constitutionality of that law in the courts, rather than through resisting arrest. Little progress would be made if the constitutionality of laws

were debated between officers and those arrested on the streets. As seen in this case, the violence that ensued from defendant's resistance posed a danger to defendant, the officers, and others who gathered and took part in the melee. This Court previously expressed a strong stance against allowing resistance to arrest. *Wess, supra* at 245. In *Wess,* this Court stated that:

> Courts and legislatures in other jurisdictions have found the right to resist an unlawful arrest to be outmoded in our contemporary society. For example, the Washington Supreme Court [has] examined the common-law right to resist unlawful arrest and found that the policy concerns that once supported the right were, for the most party, no longer serious concerns. Specifically, the court noted that the right arose at a time when mere imprisonment often resulted in death or serious physical harm. Our modern judicial processes have been reformed so that arrestees enjoy the right to reasonable bail, the right to counsel at critical stages of the trial, and the right to a prompt judicial determination of probable cause. . . . [In a number of states,] courts have regularly voiced concern that allowing this kind of "outmoded common law rule . . . fosters unnecessary violence in the name of an obsolete self-help concept . . . ." [*Id.* (citations omitted).]

Therefore, reaffirming this Court's ruling in *Hunter, supra,* we hold that the validity of an arrest is not affected by the subsequent judicial determination that the ordinance is unconstitutional. Because defendant's arrest was lawful, he was not permitted to use reasonable force to resist.

Affirmed.