*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AUTRY KEITH BEDWELL,

        Defendant-Appellant.

UNPUBLISHED
June 11, 2019

No. 344820
Tuscola Circuit Court
LC No. 17-014222-FH

Before: GADOLA, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of three counts of resisting and obstructing a police officer (R&O), MCL 750.51d, and one count of disturbing the peace, MCL 750.170. The circuit court sentenced defendant to three concurrent terms of two years' probation with a deferred sentence of 365 days in jail for the R&O convictions and two days in jail for the disturbing the peace conviction, with credit for two days served. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On August 21, 2017, defendant took his grandchildren to the Tuscola County courthouse, where they had been subpoenaed to testify at a preliminary examination in a child abuse case. The prosecutor handling the case, Erica Walle, and a victim's advocate, Amy Gregor, approached defendant in the lobby and asked if they could speak with his grandchildren before the proceeding. Defendant refused, and repeatedly told Walle and Gregor that "this was bullsh*t" and that he did not have to cooperate with their request. Tuscola County Sheriff's Detective Scott Jones, the detective in charge of the child abuse case, arrived at the courthouse as Walle and Gregor were talking to defendant. They asked him to join their conversation to try to "deescalate" the situation.

Detective Jones characterized defendant's voice as "very loud" and recalled that he could hear him saying "bullsh*t" as he was walking up the courthouse stairs to the lobby. Detective Jones asked defendant to calm down, but defendant's conduct did not change. Detective Jones then asked defendant to "take a walk" with him to another area to discuss his grievances in a more private setting; according to Detective Jones, there were about 10 to 12 other people in the

courthouse lobby and court was in session, and he wanted to give defendant an opportunity to air his grievances in a location with fewer people around. However, defendant refused to accompany Detective Jones away from the lobby, and Detective Jones told defendant that "if he continued to be loud and disruptive that he would be arrested for disorderly conduct." Defendant continued to speak in a voice that Detective Jones characterized as "loud enough to be heard throughout the entire courthouse" and continued to tell Detective Jones that "this was bullsh*t and that he didn't have to cooperate." Detective Jones asked defendant to stand up from his chair, and reached for his left arm. Defendant jerked his arm away from Detective Jones and refused to stand up. Several other law enforcement officers heard defendant's outbursts or saw him struggling with Detective Jones, and arrived to assist in effecting his arrest. Eventually, Detective Jones and the other officers were able to handcuff defendant and take him into custody.

Defendant was convicted as described. This appeal followed.

## II. FIRST AMENDMENT

Defendant argues that the circuit court erred by denying his motion to quash the bindover from the district court, and by denying his motion for a directed verdict, because his conduct at the courthouse constituted protected speech under the First Amendment, US Const, Am I, and therefore his arrest was unlawful and he had the right to resist it. We disagree.

We review for an abuse of discretion a district court's decision to bind over a defendant. *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000). An abuse of discretion occurs when a trial court chooses an outcome falling outside the principled range of outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We review a trial court's decision on a motion for directed verdict to determine whether, viewed in the light most favorable to the prosecution, the evidence presented by the prosecution would enable a rational trier of fact to find that the elements of the charged offenses were proven beyond a reasonable doubt. *People v Daniels*, 192 Mich App 658, 665; 482 NW2d 176 (1991). We review de novo questions of constitutional law.

A person being arrested may, under certain circumstances, resist an arrest on the grounds that it is unlawful. See *People v Moreno*, 491 Mich 38, 41; 814 NW2d 624 (2012). Defendant argues that his conduct at the courthouse constituted protected speech under the First Amendment, US Const, Am I, and that MCL 750.170 cannot apply to his conduct without being constitutionally infirm. Therefore, defendant argues, his arrest for disturbing the peace was unlawful and he could not be convicted of R&O for resisting it. We disagree.

MCL 750.170 provides:

> Any person who shall make or excite any disturbance or contention in any tavern, store or grocery, manufacturing establishment or any other business place or in any street, lane, alley, highway, public building, grounds or park, or at any election or other public meeting where citizens are peaceably and lawfully assembled, shall be guilty of a misdemeanor.

Defendant cites *People v Vandenberg*, 307 Mich App 57; 859 NW2d 229 (2014), in support of his argument that MCL 750.170 may not be applied to his speech in this case. In *Vandenberg*, the defendant grew agitated in the lobby of a courthouse where she was attempting to pay a traffic ticket while reading a prepared speech in which she objected to the ticket and to being compelled to pay it. *Id*. at 58-60. She was eventually asked to leave the courthouse, and while being escorted from the building, she struggled with law enforcement officers and was arrested for disturbing the peace and for resisting arrest. *Id*. at 59-60. At trial, the prosecutor "focused very specifically on the 'contention' component of the statute," and the defendant argued on appeal that the statute's prohibition against exciting a "contention" was constitutionally overbroad and impinged on protected speech. *Id*. at 60-61. This Court agreed, and reaffirmed its earlier holding in *People v Purifoy*, 34 Mich App 318, 321; 191 NW2d 63 (1971), that "the phrase 'exciting a contention' as used in MCL 750.170 is unconstitutionally overbroad insofar as it criminalizes the peaceable public expression of ideas, merely because those ideas may be offensive to others." *Vandenberg*, 307 Mich App at 67. However, the Court recognized that "the constitutional problems identified in *Purifoy* may be avoided, provided that the contention language is not included in instructions." *Id*. at 66. This Court reversed the defendant's conviction in *Vandenberg* for disturbing the peace because it was unclear whether her conviction was based on the unconstitutional grounds of exciting a contention, or on the lawful grounds of disturbing the peace. *Id*. at 67-68.

By contrast, the focus in this case was on the portion of the statute that prohibits "exciting a disturbance." The jury instructions referred only to this portion of the statute, and the verdict form references "disturbing the peace," not "exciting a contention." Thus, the portion of the statute that this Court concluded was unconstitutionally overbroad in *Vandenberg* was not at issue here, and *Vandenberg* consequently does not aid defendant's case. Moreover, we conclude that defendant's conduct could be lawfully governed by MCL 750.170 without violating his First Amendment rights.

Defendant asserts that he was arrested for "being loud and using swear words," which he maintains was not grounds for a valid arrest because this conduct was a lawful expression of his right to free speech under the First Amendment. However, it is a recognized principle of First Amendment jurisprudence that First Amendment rights are not absolute and that the state has a valid interest in protecting "the well-being and tranquility of a community." *Kovacs v Cooper*, 336 US 77, 78, 83, 85-86; 69 S Ct 448; 93 L Ed 513 (1949) (upholding the constitutionality of a municipal ordinance that prohibited the use of loud speakers in vehicles that emitted "loud and raucous noises" on the public streets). More specifically, the United States Supreme Court has held that the state has a valid interest in protecting the peace of certain types of government-owned property: "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v NAACP Legal Defense & Ed Fund, Inc*, 473 US 788, 799-800; 105 S Ct 3439; 87 L Ed 2d 567 (1985). Rather, "the extent to which the Government can control access depends on the nature of the relevant forum." *Id*. at 800. In a public forum, a location traditionally used for the free exchange of ideas, the government may only restrict speech when it has a compelling governmental interest. *Id*.; see also *Int'l Society for Krishna Consciousness v Lee*, 505 US 672, 679-680; 112 S Ct 2701; 120 L Ed 2d 541 (1992). By contrast, "[c]ontrol over

access to a nonpublic forum can be based on subject matter . . . so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius*, 473 US at 806.

Although the lobby of a courthouse is a public place, its principal purpose is not the free exchange of ideas. See *Braun v* Baldwin, 346 F 3d 761, 763 (CA 7, 2003).[1] Rather, a courthouse is a government-owned property established for the purpose of administering justice, and the government has an interest in preserving a decorous environment there in order to achieve that interest. *Id*. aat 763-764 (citatons omitted). It is clear from the record that Detective Jones did not seek to restrict defendant's speech based on content, but sought only to regulate the volume and minimize the disruptiveness of the speech—in fact, Detective Jones offered to hear defendant's grievances in a more private setting, so that other patrons of the courthouse would not be disturbed.[2] Because the state had a valid, viewpoint-neutral interest in restricting noise levels and maintaining a calm atmosphere inside the courthouse, the conduct that led to defendant's arrest was not protected by the First Amendment. *Cornelius*, 473 US at 806.

The circuit court also did not abuse its discretion when it denied defendant's motion to quash the bindover from the district court because the district court had properly found "that there [was] evidence regarding each element of the crime[s] charged or evidence from which the elements may be inferred in order to bind over . . . defendant." *Hudson*, 241 Mich App at 278. There was evidence to support a finding that defendant's conduct disturbed the peace, and that he resisted officers who were performing their official duties. See MCL 750.170 and MCL 750.51d. We also conclude that the circuit court did not err by denying defendant's motion for a directed verdict based on its conclusion that the evidence, when considered in the light most favorable to the prosecution, established that a rational trier of fact could find that the essential elements of the charged crime were proven beyond a reasonable doubt. *Daniels*, 192 Mich at 665.

## III. SPECIAL JURY INSTRUCTION

Defendant also argues that the circuit court abused its discretion by denying his request to read to the jury a proposed special instruction regarding his First Amendment argument. We disagree. We review de novo issues of law arising from proposed jury instructions, but review for an abuse of discretion a trial court's determination whether an instruction was applicable to the facts of the case. *People v Waclawski*, 286 Mich App 634, 675; 780 NW2d 321 (2009).

---

[1] Although not binding on this Court, decisions of lower federal courts may be persuasive. See *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004).

[2] To the extent that defendant argues that his use of profanity was the cause of his arrest, and that his arrest was therefore based on the content of his speech, his claim is not supported by the record. The record shows that the officers repeatedly asked defendant to calm down and lower his voice. There is no indication from the record that defendant would have been arrested if he had lowered his voice but continued to use profanity.

Jury instructions must adequately protect the defendant's rights by fairly presenting to the jury the issues to be tried. *People v Dumas*, 454 Mich 390, 396; 563 NW2d 31 (1997). "[T]he jury is the sole judge of the facts. It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact." *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). On the other hand, questions of law, such as whether a party's conduct was protected by the First Amendment despite otherwise constituting violation of a particular statute, are for the court to decide. See *Dennis v United States*, 341 US 494, 513; 71 S Ct 857; 95 L Ed 1137 (1951).

Defendant's proposed instruction sought to inform the jury that he believed his conduct was protected by the First Amendment, that the First Amendment protects a significant amount of criticism leveled at police officers, and that "a person is entitled to express his opinion without rendering himself liable to arrest unless he is inciting others to break the law." The instruction also stated that police officers are not "exempt" from criticism and that the right to criticize law enforcement officers is one of the characteristics that distinguishes this country from a "police state." The circuit court declined to read the instruction based on its determination that it was "inappropriate" and was not applicable to the case.

We agree that the instruction was not an appropriate jury instruction. Defendant's proposed instruction did not accurately state the law regarding the elements of disturbing the peace or resisting arrest and thus did not fairly present the issues to be tried. *Dumas*, 454 Mich at 396. Additionally, the instruction sought to require the jury to decide whether defendant was engaged in conduct protected by the First Amendment, which was a question of law for the court to decide, and which the court had previously resolved by denying defendant's motion for a directed verdict. See *Dennis*, 341 US at 513. Finally, the instruction sought to inject much broader issues than defendant's guilt or innocence into the trial, inviting jurors to take a stand against a "police state." The circuit court did not abuse its discretion by concluding that the instruction was inappropriate and by declining to give it.

## IV. THEORY OF THE CASE

Defendant also argues that, even if the circuit court did not read his proposed special instruction to the jury as a jury instruction, it nonetheless should have read it to the jury as defendant's "theory of the case." We disagree.

MCR 2.512(A)(2) provides that

> after the close of the evidence, each party shall submit in writing to the court a statement of the issues and may submit the party's theory of the case regarding each issue. The statement must be concise, be narrative in form, and set forth as issues only those disputed propositions of fact that are supported by the evidence. The theory may include those claims supported by the evidence or admitted.

MCR 2.512(B)(2) provides:

Before or after arguments or at both times, as the court elects, the court shall instruct the jury on the applicable law, the issues presented by the case, and, if a party requests as provided in subrule (A)(2), that party's theory of the case.

MCR 2.512 is a rule of civil procedure, not one of criminal procedure. See MCR 2.001 ("The rules in this chapter govern procedure in all civil proceedings . . . ."). It is therefore inapplicable. Moreover, defendant's proposed jury instruction was not a concise narrative that "set forth as issues only those disputed propositions of fact that are supported by the evidence." See MCR 2.512(A)(2). Rather, as discussed previously, defendant's proposed instruction sought to usurp the role of the court in determining issues of constitutional law. Additionally, defendant's proposed instruction inaccurately stated the law regarding the crimes for which defendant was charged and sought to interject issues broader than defendant's guilt or innocence into the trial. Therefore, even if MCR 2.512 applied in this case, which it did not, defendant's special instruction did not comply with the requirements of this rule, and the circuit court did not err by declining to read it to the jury as defendant's theory of the case.[3]

## V. VERDICT FORM

Defendant also argues that the circuit court erred by declining his request to modify the verdict form. We disagree. We review a trial court's decision on a request to modify a verdict form in the same manner we review other issues regarding jury instructions. See *Waclawski*, 286 Mich App at 675.

Defense counsel asked the circuit court to modify the verdict form "to have disturbing the peace first and then . . . if the jury were to find that [defendant] did not disturb the peace, they do not need to go any further. If they find that he's guilty of it, then they would go on to the resisting and obstructing portion of the verdict form." The circuit court rejected this request, noting that the information listed the resisting and obstructing offenses before the charge of disturbing the peace, and stating further that it did not agree with defense counsel's reasoning.

Defendant argues that his request was appropriate because in order for a defendant to be guilty of resisting and obstructing, the law enforcement officer must have been engaged in a lawful activity. Therefore, defendant reasons, if he was not guilty of disturbing the peace, the arrest could not be lawful. This argument does not accurately state the law. A defendant need not be convicted of the offense for which he was arrested in order to be convicted of R&O. In order to convict a defendant of R&O, a jury need only find that the arrest was lawful and that the defendant knew or had reason to know that the officers were performing their duties at the time of the arrest. See MCL 750.81d(1); CJI2d 13.1; *People v Macleod*, 254 Mich App 222, 227-228; 656 NW2d 844 (2002). An arrest is lawful "if an arresting officer possesses enough information demonstrating probable cause to believe that an offense has occurred and that the defendant

---

[3] We note that defendant was not forbidden—in his closing arguments—from arguing that his arrest was unlawful, from invoking the First Amendment, or even from reading his proposed jury instruction verbatim to the jury.

committed it." *Id.* An officer has "[p]robable cause to arrest . . . where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.*

Consequently, the jury in this case did not need to determine beyond a reasonable doubt that defendant had disturbed the peace in order to convict defendant of R&O; rather, it needed only to determine that, presuming all the other elements were also met, the officers arresting defendant had probable cause to do so. Defendant's requested modification to the verdict form was contrary to law and the circuit court correctly rejected it. *Dumas*, 454 Mich at 396.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle