*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EZEKIEL ZAMARIE DAVIS,

        Defendant-Appellant.

UNPUBLISHED
October 22, 2020

No. 347310
Wayne Circuit Court
LC No. 18-002960-01-FH

Before: GADOLA, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his convictions and sentences, following a jury trial, of two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(c) (sexual penetration of a helpless victim), and one count of fourth-degree CSC (CSC-IV), MCL 750.520e(1)(c) (sexual contact with a helpless victim). The trial court sentenced defendant to serve 10 to 15 years' imprisonment for each CSC-III conviction, and two years' probation for the CSC-IV conviction. We affirm.

## I. BACKGROUND

Defendant's convictions arise out of events that took place at his combination barber shop and residence following a social gathering that had been attended by, among other people, the victim. The victim did not drive because she had a seizure disorder, and she did not initially intend to remain so long at the gathering; however, the food was delayed in being prepared, and the victim's grandmother would not allow her to return home late. The victim consumed some alcohol and some marijuana at the gathering, and she was already deprived of sleep. She originally intended to sleep at a friend's house, but ultimately "just kind of went with" remaining at defendant's residence. The victim and defendant had a friendly and flirtatious relationship at that time. The victim ended up sleeping in defendant's bed, fully clothed. She felt comfortable enough to "cuddle" with defendant, but did not intend to have sex with him. She noticed surveillance cameras and monitors about the premises, including a camera over the bed, but defendant told her it was not turned on. This would prove to be a lie.

-1-

The victim testified that she woke up "pretty early" to discover that her hair had been messed up and "in between [her] legs was itching." She then discovered that her underwear and pants had been removed. The victim asked defendant if he had sex with her, which he confirmed. He also stated that he had used protection "[b]ut it broke." The victim was uncomfortable, scared, and confused; and she wanted to get away from defendant. Defendant gave her some money for a contraceptive and offered to take her home, but she obtained a ride from a friend instead. The victim consistently maintained that she had no memory of anything between falling asleep next to defendant and waking up the next morning. She admitted that one of her concerns was the possibility that she had actually consented to sex but did not recall doing so. The victim went to a hospital, where she received prophylactic medication to help prevent contracting a disease. She also obtained a sexual assault examination, which revealed no apparent physical injuries, which an expert in the field of forensic nurse examination testified was common in sexual assaults.

As noted, it turned out that the surveillance camera was operational and had actually recorded the incident. The video recording was played for the jury while the prosecutor elicited comments from the victim about what was being depicted, although the trial court sustained some objections from defense counsel on the grounds that the video should speak for itself. The video recording generally shows the victim to interact in a friendly and intimate manner with defendant, although repeatedly redirecting or rejecting his overtly sexual advances, until she falls asleep. Thereafter, although she makes some movements, she is clearly unconscious while defendant sexually assaults her. At sentencing, the trial court described the video as "appalling to watch," and opined that it showed "beyond any reasonable doubt" that the victim was "asleep" and "did not consent to anything."

Defendant challenges his convictions on the grounds that the trial court should have permitted discovery of certain alleged medical records of the victim, and that defense counsel was ineffective for having declined to call certain witnesses or request a jury instruction on the defense of consent. Defendant additionally challenges defendant's sentences for CSC-III on the grounds that some of the sentencing guidelines' variables were incorrectly scored, and that the sentences imposed were not proportional to the circumstances of the offenses. Defendant, in a Standard 4[1] brief filed *in propria persona*, joins appellate counsel in challenging the effectiveness of trial counsel and the scoring of certain sentencing variables. He also challenges the sufficiency of the evidence, based in part on points in the video recording that he contends depict the victim as conscious and responsive. We note at the outset that much of the argument on appeal turns on a subtle misapprehension of the nature of the charges. Defendant's convictions are not, strictly speaking, premised on a lack of consent by the victim so much as a lack of *ability to* consent.

## II. MEDICAL RECORDS

Defense counsel moved for disclosure of "all documents for information that was disclosed" in the course of a prior 2015 lawsuit involving injuries the victim suffered in an automobile accident. The trial court denied the motion as irrelevant and, implicitly, as a fishing expedition. We agree.

---

[1] Supreme Court Administrative Order No. 2004-6, Standard 4.

A trial court's decision on a request for discovery is reviewed for an abuse of discretion. *People v Fink*, 456 Mich 449, 458; 574 NW2d 28 (1998). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012).

Defense counsel contended that the records would help explain the victim's lack of recollection of the sexual assault. Defendant claimed that the victim's lack of recollection of the sexual activity was incredible, but also admitted that he had "no idea" what her records could indicate, such as whether the victim had a sleep disorder or "just simply doesn't remember." Defendant opined that the issue was whether defendant reasonably believed that the victim was a willing participant. The trial court agreed with defendant that the medical records, having been disclosed in litigation, were not necessarily privileged. However, it concluded that defendant had provided nothing more than speculation whether the records might have any relevance to the instant matter. The trial court went on to rule that defendant would be entitled to ask the victim "whether or not she was asleep at the time, had any recollection, whether she didn't." The court additionally denied defense counsel's request for the court to conduct an in-camera review of the records to make its own determination of relevance. On appeal, defendant makes essentially the same arguments, with an equal level of uncertainty about what value the records might hold.

"Criminal defendants do not have general rights to discovery." *People v Stanaway*, 446 Mich 643, 680; 521 NW2d 557 (1994). Instead, discovery in criminal cases is left to the trial court's discretion, although discovery requests should ordinarily be denied when they are merely "a fishing expedition to see what may turn up." *Id*. (quotation omitted). Discovery in criminal cases is governed by MCR 6.201. *People v Phillips*, 468 Mich 583, 587-589; 663 NW2d 463 (2003). Defendant has not articulated how his request falls into any of the enumerated items subject to disclosure under MCR 6.201(A) or (B). Thus, the court was not authorized to grant defendant's discovery request unless he could show "good cause why the trial court should order the requested discovery" under MCR 6.201(I). *People v Greenfield*, 271 Mich App 442, 448; 722 NW2d 254 (2006). "Absent such a showing, courts are without authority to order discovery in criminal cases." *Id*. Defendant only articulates a generalized right to present a defense, and the supposition that the records might have supported the possibility that the victim had actually consented to having sex with defendant and then forgotten.

Notably, defendant still only offers conjecture. In any event, the victim outright admitted that she was concerned by precisely that possibility—that she had actually consented—and that she could not recall the assault. Thus, the medical records would not have been relevant, because the victim's lack of recollection and the possibility that she had actually consented were not seriously at issue. See MRE 401. There appears to be no serious doubt about the victim's ability to recall that she did not consent before she fell asleep. Thereafter, the theory of defendant's charges was that the victim was helpless or unconscious. In other words, the issue was not so much whether the victim did or did not give her consent, as whether she even *could* grant or withhold that consent—totally irrespective of whether she could later recall whether she consented. The trial court correctly denied defendant's discovery request.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant, through counsel and *in propria persona*, raises various claims of ineffective assistance of counsel. We disagree with all of those claims and find that defendant did receive effective assistance of counsel.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

Because no evidentiary hearing or *Ginther*[2] hearing has been held, our review is limited to mistakes apparent from the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005). However, defendant preserved this issue by filing motions to remand, which we denied without prejudice.[3] See *People v Sabin*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Thus, our review will be mindful that it might yet be proper to remand for an evidentiary hearing. For the limited purpose of determining whether such a remand might be proper, we are permitted to consider evidence outside the record. *People v Moore*, 493 Mich 933; 825 NW2d 580 (2013).

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Le Blanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). To establish ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994). A defendant must further establish a reasonable probability that, but for counsel's error, the result of the proceedings would have been different, and that the attendant proceedings were fundamentally unfair or unreliable. *People v Poole*, 218 Mich App 702, 718; 555 NW2d 485 (1996).

Trial counsel's decisions concerning the choice of witnesses or theories to present are presumed to be exercises of sound trial strategy. *People v Julian*, 171 Mich App 153, 158-159; 429 NW2d 615 (1988). To overcome that presumption, a defendant must show that counsel's failure to prepare for trial resulted in counsel's remaining ignorant of substantially beneficial evidence that accordingly did not get presented. See *People v Caballero*, 184 Mich App 636, 640-641, 642; 459 NW2d 80 (1990). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### B. CHOICE OF WITNESSES

Defendant argues that trial counsel was ineffective for failing to call some of the victim's friends as witnesses. The victim testified that she talked with some of her friends before reaching the conclusion that she did not consent to having sex with defendant. Defendant argues that at least one of the friends held particular animosity toward, and jealousy of, defendant. Defendant

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

[3] *People v Davis*, unpublished orders of the Court of Appeals, entered October 17, 2019, and January 15, 2020, respectively (Docket No. 347310).

argues that these friends should have been called as witnesses to explore the extent to which they might have influenced the victim, and to impeach the victim's credibility. We disagree.

"[T]he failure to interview witnesses does not itself establish inadequate preparation." *Caballero*, 184 Mich App at 640. Defendant, once again, offers only speculation as to how the friends might have influenced the victim, or what they might have said as witnesses. Furthermore, much of the testimony defendant apparently seeks would be hearsay. In any event, trial counsel could have had sound tactical reasons not to call the friends. Doing so might have "opened the door" to the prosecution exploring how distraught the victim had been, to illustrate that the victim had not merely made a choice that she regretted. Finally, as noted, it was not disputed that the victim could not remember the assault and conceded that she might have consented. Defendant, through counsel and *in propria persona*, has failed to show that the friends would have proved to be valuable witnesses or that counsel made a poor strategic choice by not calling them.

## C. CONSENT INSTRUCTION

Defendant next argues that trial counsel erred by failing to request a jury instruction on the defense of consent. Defendant contends that the failure to seek such an instruction was inconsistent with the defense theory that the victim had been conscious and consenting at all relevant times. We disagree.

Defendant recognizes that the consent instruction, M Crim JI 20.27, is accompanied by a usage note stating that it "should be given only where there is evidence of consent" and that it is "obviously inappropriate where the victim is mentally disabled, physically helpless, or below the age of consent." Again, defendant's charges were premised on the victim being incapable of giving consent, rather than strictly failing to give consent. In other words, force or coercion were not elements of the charges. Importantly, consent is not truly a *per se* defense to any CSC charge. Rather, consent is a defense to the particular elements of force or coercion. *People v Waltonen*, 272 Mich App 678, 688-689; 728 NW2d 881 (2006). Notwithstanding defendant's generalized citation to a right to present a defense, he was simply not entitled to a jury instruction irrelevant to any element of any charge against him. Instructions must cover all material issues, defenses, and theories that have evidentiary support. *Daniel*, 207 Mich App at 53. "Conversely, an instruction that is without evidentiary support should not be given." *People v Wess*, 235 Mich App 241, 243; 597 NW2d 215 (1999).

The trial court properly instructed the jury that the prosecution was obliged to prove beyond a reasonable doubt that the victim "was physically helpless at the time of the alleged act," meaning "unconscious, asleep or physically unable to communicate that she did not want to take part in the alleged act." The court thus set forth helplessness as a condition rendering it physically impossible to consent to an act. Clearly, any consent given by the victim after the point at which she fell asleep would be logically relevant, but that relevance would be a tendency to show that she was neither unconscious nor incapable of communicating her intent. The instruction as given accurately covered the prosecution's theory, and it permitted defendant to present his consent theory to the jury for a relevant reason. If defendant had requested the consent instruction, it would have been properly denied. Therefore, counsel cannot be ineffective for having failed to request it.

-5-

## D.  CROSS-EXAMINATION OF THE VICTIM

Defendant, *in propria persona*, argues that defense counsel was ineffective for failing to take advantage of what the surveillance video depicted while cross-examining the victim. However, counsel effectively cross-examined the victim regarding her apparent friendliness and closeness with defendant, and her state of sobriety.  The recording initially shows the victim consistently and clearly rejecting a multitude of defendant's overtly sexual advances, but otherwise displaying apparent comfort and intimacy with defendant.  The remainder of the video, after the point at which the victim fell asleep, was, in contrast, simply not beneficial to the defense. Consequently, it would not have been advantageous to call further attention to the video. Defendant particularly emphasizes parts of the video supposedly depicting the victim as being active or conscious.  We disagree.  The victim does move a little bit in the video, and she rubs her nose on occasion.  However, it is clear that she displays no apparent awareness of defendant assaulting her.  Although she appears to partially wake up at one point, she only moves away from defendant, which can hardly constitute active consent.  Furthermore, defendant paused his assaults whenever the victim appeared to display any hint that she might awake.  Thus, the video establishes that defendant seized sexual opportunities only by stealth, during periods when the complainant had faded out of consciousness.  What little alertness the victim showed during the period when the sexual assault was taking place can hardly be interpreted as indicating that she was aware of, and consenting to, defendant's sexual contacts.

Defendant also complains that defense counsel failed to cross-examine the victim with testimony from the preliminary examination.  Defendant argues that the victim testified at the preliminary examination that her friends never suggested to her that they had difficulty waking her, that she did not have seizures in her sleep, and that she recalled no seizure at the time relevant. None of that testimony, however, was in direct conflict with the victim's trial testimony, and neither is its relevance apparent; so defendant brings to light no missed opportunity.  Similarly, defendant argues that defense counsel should have highlighted that the victim and defendant had discussed whether the latter had a sexually transmitted disease, but does not explain why doing so would have impugned the victim's credibility.

Defendant has not shown that defense counsel made inappropriate decisions not to call witnesses or request instructions, nor has defendant shown that defense counsel failed to take advantage of any missed opportunities to cross-examine the victim.  We are likewise not persuaded that there would be any value in remanding this matter for an evidentiary hearing.

## E.  MISCELLANEOUS ALLEGATIONS OF INEFFECTIVE ASSISTANCE

Defendant finally raises a number of arguments *in propria persona* to the effect that trial counsel should have taken advantage of a photograph of a clothed companion, some text messages, and some phone calls; for objecting to a question to the victim that would have benefitted the defense; and for failing to review the recording of a 911 call before trial.  However, defendant does not support any of these arguments with cogent or coherent argument, record citations, or citations to authority.  Defendants appearing *in propria persona* are entitled to greater lenity in construing and accepting their pleadings, but they are not excused from providing support for their claims. *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976).  We have thus carefully considered defendant's handwritten brief, insofar as it is possible to do so, given that his

cursive handwriting renders it nearly illegible. However, it is not the role of this Court to search for evidentiary or legal support for an argument made by a party, even where that party is *in propria persona*. See *People v Mackle*, 241 Mich App 583, 604 n 4; 617 NW2d 339 (2000); *People v Jones (On Rehearing)*, 201 Mich App 449, 456-457; 506 NW2d 542 (1993).

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant argues, *in propria persona*, that his trial attorney was ineffective for failing to "prove" that the evidence was insufficient to establish his guilt. We disagree.

When reviewing either sufficiency of the evidence or motions for directed verdict, the reviewing court must view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime for which defendant was convicted proven beyond a reasonable doubt. *People v Petrella*, 424 Mich 221, 268-270; 380 NW2d 11 (1985). This Court is not permitted to second-guess any credibility determinations made by the trier of fact. *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998). The standard is not whether the jury could possibly have found in defendant's favor. Quite the opposite: the standard is whether there was evidence from which the jury could reasonably have found in favor of the verdict without resorting to speculation. *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883); *People v Bailey*, 451 Mich 657, 673-675, 681-682; 549 NW2d 325 (1996). "It is the province of the jury to determine questions of fact and assess the credibility of witnesses." *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

Defendant again relies on attempting to argue that there are portions of the video recording that supposedly show the victim to be alert and consenting. As noted, our review of the video does not support defendant's argument, and it is clear from the record that what others saw in the courtroom also differed greatly from defendant's characterization of the video. Even if there was some doubt or ambiguity as to what the video shows, defendant's argument fundamentally relies on asking this Court to impermissibly invade the role of the jury. The trial court's commentary at sentencing clearly shows that, at a minimum, the video evidence permitted reasonable minds to differ as to what it revealed of the victim's level of consciousness. Presuming, but without deciding, that the jury *could* have concluded that it did show the victim to be awake and consenting, that does not establish that the evidence preponderates so heavily against the verdict that defendant's conviction is a miscarriage of justice. See *Lemmon*, 456 Mich at 642. A difference of opinion as to how the evidence *could* be interpreted simply does not constitute insufficient evidence or grounds for a directed verdict; rather, it constitutes a question that can only be resolved by the jury and cannot be thereafter second-guessed. In other words, even if the jury could have found differently, that does not prove that the jury was obligated to find differently. Trial counsel cannot be ineffective for failing to achieve the impossible or failing to advance a futile argument. See *Ericksen*, 288 Mich App at 201.

## V. SCORING OF THE SENTENCING GUIDELINES

Defendant, through counsel and *in propria persona*, challenges the scoring of Offense Variables (OVs) 3 and 4; and, through counsel, defendant additionally challenges the scoring of Prior Record Variable (PRV) 7.

A sentencing court must score, and consider the recommendations of, the sentencing guidelines. *People v Lockridge*, 498 Mich 358, 364-365; 870 NW2d 502 (2015). "A defendant is entitled to be sentenced according to accurately scored guidelines and on the basis of accurate information." *People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (footnote citations omitted).

## A. OV 3

The trial court assessed 10 points for OV 3, which is proper when the victim suffered bodily injury requiring medical treatment. MCL 777.33(1)(d). For purposes of OV 3, " 'bodily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). This includes where "[t]he victim did not suffer any acute physical trauma or injury as a result of the rape and most of the medical treatment she received was precautionary," but the victim did suffer an infection. *Id*. More recently, this Court has explained that, consistent with a long line of unpublished cases, purely prophylactic medical treatment to prevent an infection or a pregnancy following a sexual assault is sufficient by itself to establish the requisite "bodily injury" under OV 3. *People v Barnes*, ___ Mich App ___, ___ n 2; ___ NW2d ___ (2020) (Docket No. 348038), slip op at p 3). The evidence established that after the assault here, there was a very real concern as to *both* possible pregnancy and possible infection. Where there is a meaningful possibility of harm in the absence of treatment, prophylactic treatment is medically warranted promptly without needing to wait for symptoms to develop. The trial court properly scored OV 3 at 10 points on the basis of the victim seeking obviously appropriate prophylactic medical treatment.

## B. OV 4

The trial court assessed 10 points for OV 4. A score of 10 points is proper either where "[s]erious psychological injury requiring professional treatment occurred to a victim," or where "the serious psychological injury may require professional treatment," irrespective of whether treatment has been sought. MCL 777.34. Defendant makes the incredible argument that because the victim was unconscious during the actual assault, she cannot have suffered any psychological injury as a consequence of the assault. It *might* be reasonable to presume that a person is unlikely to be psychologically affected by an event of which the person is, and remains, totally unaware. However, those are not the facts here. Psychological injury can certainly be suffered from knowledge of an event or from the consequences of the event. Trauma can be damaging even if a victim does not recall the specific act of infliction. The victim's commentary during sentencing conclusively established that she had, in fact, suffered severe, lasting, and debilitating psychological injury as a consequence of defendant's sexual assault. The evidence amply supported the trial court's score of 10 points for OV 4.

## C. PRV 7

The trial court assessed 20 points for PRV 7, which is proper when "[t]he offender has 2 or more subsequent or concurrent convictions." MCL 777.57(1). For purposes of PRV 7, those convictions must be felonies. MCL 777.57(2)(b). Because CSC-III was defendant's highest-classified offense, CSC-III was his scoring offense. *People v Lopez*, 305 Mich App 686, 689-692; 854 NW2d 205 (2014). Defendant accurately observes that, as a consequence, PRV 7 was scored on the basis of his concurrent CSC-IV conviction, which is statutorily defined as a misdemeanor. MCL 750.520e(2). However, for purposes of the sentencing guidelines, a "felony" is defined as an offense "expressly designated by law to be a felony" *or* an offense punishable "by imprisonment for more than 1 year." MCL 761.1(f). Because CSC-IV is punishable by up to two years, it constitutes a "felony" for purposes of scoring the sentencing guidelines. *People v Carlson*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 344674), slip op at p 4. The trial court correctly scored PRV 7 at 20 points.

## VI. PROPORTIONALITY

Finally, defendant argues that his sentences are disproportionate, unreasonable, and the product of the trial court's allegedly improper emotional reaction to the video recording. We disagree.

The recommended minimum sentence range for defendant's CSC-III convictions under the sentencing guidelines was 78 to 130 months. The trial court imposed minimum sentences of 120 months for defendant's CSC-III convictions. Defendant's sentences are therefore within the minimum guidelines range.[4] Defendant's sentences are therefore presumptively reasonable and proportionate. *People v Odom*, 327 Mich App 297, 315; 933 NW2d 719 (2019). "To overcome the presumption, defendant [must] show that there was something unusual about the circumstances of his case that made the sentence disproportionate." *People v McFarlane*, 325 Mich App 507, 538; 926 NW2d 339 (2018). The only argument defendant coherently presents is based on the trial court observing at sentencing that this case was extremely unusual because the sexual assault had actually been recorded, and stating,

> By any reasonable person[']s standard, beyond any reasonable doubt, as far as I'm concerned, after watching that video, [the victim] was asleep. And actually, before [the victim] went to sleep, it's very clear to this Court that she did not consent to anything, that she never consented to have sex with the defendant. It was appalling. It was appalling to watch.

The jury clearly also found the video to show that the victim had been unconscious and had not consented to having sex with defendant, so there can be no error in the trial court simply agreeing with the jury. To the extent the trial court described the video as "appalling" and "appalling to

---

[4] Although below the top of the guidelines range, this was two-thirds of the statutory maximum sentence of 15 years, MCL 750.520d(2), so it was the highest minimum sentence the court could legally impose. See MCL 769.34(2)(b); *People v Tanner*, 387 Mich 683, 690; 199 NW2d 202 (1972).

watch," defendant provides no coherent argument, nor would any be supportable from the record or from the video itself, to suggest that the trial court's assessment was inaccurate or unreasonable.

"A defendant in a criminal trial is entitled to expect a neutral and detached magistrate." *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996) (internal quotation omitted). However, a sentencing court is entitled to consider all the facts and circumstances of the crime, as determined by the court from various sources. *People v Potrafka*, 140 Mich App 749, 751-752; 366 NW2d 35 (1985). "Opinions formed by a judge on the basis of facts introduced or events occurring during the course of the current proceedings, or of prior proceedings, do not constitute bias or partiality unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Schellenberg v Lodge No 2225*, 228 Mich App 20, 39; 577 NW2d 163 (1998); see also *Liteky v United States*, 510 US 540, 554-555; 114 S Ct 1147; 127 L Ed 2d 474 (1994). We have not been made aware of anything inappropriate or unusual about a sentencing judge being moved by particularly powerful evidence. The requirement that judges conduct themselves impartially does not go so far as to require judges to be totally unfeeling automatons. Defendant has failed to establish that the trial judge in this matter did anything more than make a fair commentary on the evidence and impose an appropriate sentence accordingly.

Affirmed.

/s/ Michael F. Gadola
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien

-10-