PEOPLE v WESS

Docket No. 205655. Submitted January 5, 1999, at Detroit. Decided April 13, 1999, at 9:05 A.M.

Randolph A. Wess was convicted by a jury in the Oakland Circuit Court, Joan E. Young, J., of resisting and obstructing an officer in the discharge of his duty. The charge arose out of an incident that occurred while police officers were investigating a complaint of noise at a home where the defendant was a visitor. The officers arrested the homeowner when he proved uncooperative. The defendant saw the arrest and ran toward the officers. He ignored warnings to stop and was sprayed with pepper spray, pushed to the ground, and arrested for interfering with the officers' attempt to investigate the complaint and to consummate the homeowner's arrest. The defendant appealed.

The Court of Appeals *held*:

1. Resisting arrest and interfering with an officer's attempts to keep the peace or some other official duty are two different crimes. The lawfulness of an arrest is an element of the former, not the latter.

2. The defendant allegedly interfered with the officers' investigation of the noise complaint, not simply the homeowner's arrest. The investigation and arrest were not mutually exclusive events and the homeowner's arrest was a natural result of the events that stemmed from the officers' investigation. The issues regarding the lawfulness of the homeowner's arrest and a citizen's right to resist unlawful arrest were not relevant matters for the jury to consider. The trial court correctly declined the defendant's request to instruct with regard to these issues.

3. To the extent that the homeowner's arrest was a component of the official activity with which the defendant interfered, the defendant was not entitled to an instruction regarding resisting an illegal arrest because a third party does not have the right to resist another's arrest, even if the arrest is unlawful.

4. Any alleged error resulting from the admission for impeachment purposes of evidence of the defendant's prior misdemeanor convictions was harmless.

Affirmed.

CRIMINAL LAW — ARREST — ILLEGAL ARRESTS — THIRD-PARTY INTERVENORS.

A person may use such reasonable force as is necessary to prevent the person's illegal attachment and to resist the person's illegal arrest; a person is not entitled to resist another person's arrest, even if the arrest is unlawful.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Richard H. Browne*, Chief, Appellate Division, and *Thomas R. Grden*, Assistant Prosecuting Attorney for the people.

*Nancy A. Plasterer*, for the defendant on appeal.

Before: HOEKSTRA, P.J., and DOCTOROFF and O'CONNELL, JJ.

HOEKSTRA, P.J. Following a jury trial, defendant was convicted of resisting and obstructing an officer in the discharge of his duty, MCL 750.479; MSA 28.747. Defendant was sentenced to two years' probation. He appeals as of right, and we affirm.

Ferndale police officers investigated a complaint that noise from a party was disturbing neighboring residents. The owner of the home where the party was being held proved uncooperative, and the police ultimately arrested him. Defendant, a close friend of the homeowner, saw the police arresting his friend and began running toward the arresting officers. When he ignored their warnings to stop, the police sprayed him with pepper spray, pushed him to the ground, and arrested him. Defendant was charged with interfering with the officers' attempt to investi-

gate the complaint and to consummate the homeowner's arrest. At trial, defense counsel sought to show that the homeowner's arrest was illegal and argued that defendant violated no law if he only resisted another's unlawful arrest. However the trial court did not allow this line of defense, and it declined to instruct the jury regarding "lawful arrest" and a citizen's right to resist an unlawful arrest.

I

Defendant's first argument on appeal is that the trial court's refusal to allow defendant to pursue his unlawful-arrest theory as a defense, and to instruct the jury accordingly, denied him due process of law. We disagree.

This Court reviews jury instructions in their entirety to determine if there is error requiring reversal. *People v Daniel*, 207 Mich App 47, 53; 523 NW2d 830 (1994). Instructions must cover each element of each offense charged, along with all material issues, defenses, and theories that have evidentiary support. *Id.* Conversely, an instruction that is without evidentiary support should not be given. *People v Johnson*, 171 Mich App 801, 804; 430 NW2d 828 (1988).

MCL 750.479; MSA 28.747 establishes criminal penalties applicable to "[a]ny person who shall knowingly and wilfully . . . obstruct, resist, oppose, assault, beat or wound any . . . person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace . . . ." This legislation is intended to protect police officers engaged in "ordinary police functions," including those "that do not directly involve placing a person under arrest." *People v Little*,

434 Mich 752, 759; 456 NW2d 237 (1990). Further, resisting arrest and interfering with an officer's attempts to keep the peace or perform some other official duty are two different crimes. *People v Rice*, 192 Mich App 240, 243; 481 NW2d 10 (1991). Although the lawfulness of an arrest is an element of the former, it is not an element of the latter. *Id.*

In this case, overwhelming evidence established that the activity with which defendant allegedly interfered was most properly characterized as part of the officers' investigation of the noise complaint, not simply the homeowner's arrest. The investigation and arrest were not mutually exclusive events. Rather, the homeowner's arrest was a natural result of the events that stemmed from the officers' investigation. Accordingly, we conclude that the issues of the lawfulness of the homeowner's arrest and of a citizen's right to resist unlawful arrest were not relevant matters for the jury to consider in this case.

Furthermore, to the extent that the homeowner's arrest was a component of the official activity with which defendant interfered, he was not entitled to an instruction regarding resisting an illegal arrest when the arrest resisted was not his own. While it is well settled in Michigan that "one may use such reasonable force as is necessary to prevent an illegal attachment and to resist an illegal arrest," *People v Krum*, 374 Mich 356, 361; 132 NW2d 69 (1965), we decline to extend the defense to third-party intervenors.[1]

---

[1] We share the concerns of other jurisdictions that the right to resist an illegal arrest is an outmoded and dangerous doctrine, and we urge our Supreme Court to reconsider this doctrine at the first available opportunity and to bring Michigan in line with the majority view as articulated in *State v Valentine*, 132 Wash 2d 1; 935 P2d 1294 (1997). We see no benefit to continuing the right to resist an otherwise peaceful arrest made by a

Courts and legislatures in other jurisdictions have found the right to resist an unlawful arrest to be outmoded in our contemporary society. For example, in *State v Valentine*, 132 Wash 2d 1; 935 P2d 1294 (1997), the Washington Supreme Court examined the common-law right to resist unlawful arrest and found that the policy concerns that once supported the right were, for the most part, no longer serious concerns. Specifically, the court noted that the right arose at a time when mere imprisonment often resulted in death or serious physical harm. *Id.* at 14-16. Our modern judicial processes have been reformed so that arrestees enjoy the right to reasonable bail, the right to counsel at critical stages of the trial, and the right to a prompt judicial determination of probable cause. *State v Thomas*, 262 NW2d 607, 611 (Iowa, 1978). According to the *Valentine* court, since 1966 the number of states permitting resistance to an unlawful arrest has declined from forty-five to twenty. *Valentine, supra* at 17-18. In those states where the common-law rule has been overturned by judicial decision rather than statute, courts have regularly voiced concern that allowing this kind of "outmoded common law rule . . . fosters unnecessary violence in the name of an obsolete self-help concept . . . ." *Thomas*, supra at 611.

Given its waning support in other jurisdictions, and in light of the considerable protections intended to guarantee the expeditious processing and humane treatment of those arrested, we can find no basis for

---

law enforcement officer, merely because the arrestee believes the arrest is illegal. Given modern procedural safeguards for criminal defendants, the "right" only preserves the possibility that harm will come to the arresting officer or the defendant.

escalating the potential harms already inherent in an arrest situation by extending to third-party intervenors the precarious right to use force against government officials. The Court of Special Appeals in Maryland, while retaining the common-law rule as it relates to the arrestee, refused to expand the rule to third-party intervenors, noting:

> A third party is usually in an even worse position than the arrestee to make an adequate assessment of the initial legality of an arrest. Accordingly, the policy reasons for not permitting him to go to the aid of one arrested illegally are even stronger than those . . . for refusing to permit the arrestee himself to resist arrest. [*Glover v State*, 88 Md App 393, 408; 594 A2d 1224 (1991).]

Other courts have reached similar conclusions. In *City of St Louis v Treece*, 502 SW2d 432 (Mo App, 1973), the Missouri Court of Appeals concluded that the risk incurred by extending the right to resist an illegal arrest to a third-party intervenor was too great:

> The potential for a melee exists where there is resistance to arrest by an individual being arrested. Much more predictable, then, is the general affray that could result by permitting third persons to interfere with and enter into the volatile circumstances attendant to an arrest particularly where . . . a crowd has gathered. [*Id.* at 435.][2]

Finally, the principle that third persons may not interfere or hinder an illegal arrest has found support in

---

[2] Like the court in *Treece*, we would qualify our decision today by noting that "[t]his decision should not be interpreted as a condonation or tolerance of precipitous police action or abuses in making illegal arrests." *Treece, supra* at 435. We are not deciding the question whether one may intervene where a police officer is using clearly excessive force.

federal law. See *United States v Vigil*, 431 F2d 1037 (CA 10, 1970).[3]

Because defendant cannot claim the right to resist another's illegal arrest, the legality of the homeowner's arrest was irrelevant to determining whether defendant was guilty of obstructing an officer in the discharge of his duty. Therefore, even if the only event with which defendant interfered was the arrest, and not the investigation generally, the trial court did not err in refusing to instruct the jury regarding defendant's right to resist an illegal arrest.

II

Defendant also argues that the trial court erred in admitting for impeachment purposes evidence of defendant's earlier misdemeanor convictions. Defendant does not dispute that he interfered with the police officer's efforts to arrest the homeowner. Rather, he simply contends that because the arrest was illegal, the interference was justified. As discussed above, defendant does not enjoy the right to resist another's arrest, even if the arrest is unlawful. Therefore, assuming arguendo that the trial court abused its discretion in admitting the evidence under MRE 609, any error was harmless in light of the overwhelming evidence of defendant's guilt. *People v Parcha*, 227 Mich App 236, 247; 575 NW2d 316 (1997).

Affirmed.

---

[3] "[A] third person does not have the right to intervene, and assist the person the officer is endeavoring to arrest to resist the arrest, if the third person knows or has good reason to believe the officer is a peace officer authorized to make arrests . . . ." *Vigil, supra* at 1042.