# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAMEY LEE ROLLAND,

      Defendant-Appellant.

UNPUBLISHED
December 17, 2015

No. 322788
Ogemaw Circuit Court
LC No. 13-004216-FH

Before: METER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

A jury convicted defendant of resisting arrest, MCL 750.81d(1); resisting arrest causing injury, MCL 750.81d(2); malicious destruction of personal property valued less than $200, MCL 750.377a(1)(d); and domestic violence, MCL 750.81(2). He was sentenced as a third-offense habitual offender, MCL 769.11, to prison terms of 18 months to 4 years for resisting arrest and 22 months to 8 years for resisting arrest causing injury, and to 93 days in jail for domestic violence and malicious destruction of personal property. Defendant appeals as of right, challenging his convictions for resisting arrest on the basis that the trial court erred in failing to instruct the jury regarding his defense that the officers used excessive force in effectuating his arrest. We affirm.

Tonya Rolland, defendant's wife, stated that she and defendant were arguing outside of their mobile home when defendant slapped her. A 13-year-old boy testified that he saw defendant throw his hands in the air and yell at his wife, "I have a gun and ammo and I'm not afraid to kill you." The boy ran home and told his mother, who called 911. Tonya testified that as she was walking away from her residence, she encountered Ogemaw County Sheriff's Office Deputy Robert Weishuhn. Michigan State Police Trooper Renee Rickel was on duty when a call came across the radio that there was a man with a gun at the mobile home community. When she arrived, she saw Weishuhn speaking with Tonya on the side of the road, and after they conferred, Rickel and Weishuhn proceeded into the community in their patrol cars. Rickel testified that they pulled into defendant's driveway, and defendant was on the porch, bent over with his back toward the officers.

Weishuhn testified that he approached defendant, asking him what had happened, but defendant did not say anything. Weishuhn testified that he saw "at least probably a dozen pill[s] in the back of [defendant's] mouth." Rickel saw Weishuhn hold his hand out, inviting defendant

-1-

to hand over the contents of his mouth; Weishuhn then "placed one hand on [defendant's] cheeks to try to get him to stop chewing." Weishuhn testified that he grabbed defendant by the jaw to prevent him from chewing because "now the situation changed, we have to protect him." Rickel testified that defendant pulled away, and a "tussle" began. Weishuhn testified that defendant had grabbed his hand, and the "fight was on."

According to Weishuhn, the two fell back on a chair and defendant's head was "right down in the rail" of the chair. Weishuhn continued to tell defendant to put his hands behind his back. Weishuhun then "drive-stunned" defendant with a Taser. That did not cause defendant to comply, and as Rickel was attempting to gain control of defendant's hands or feet, defendant grabbed her left hand, bending her fingers back. Rickel was telling defendant to stop, and he proceeded to kick her in the midsection, pushing her against the porch railing. Rickel testified that at that point, defendant "grabbed a hold of" the Taser and would not let it go. Because he would not release the Taser, Rickel sprayed pepper spray in defendant's face. Defendant "sat there," let go of the Taser, but failed to comply with the command to get on the ground.

Rickel was able to get defendant on the ground, where he landed on his hands and knees. Despite the commands to do so, defendant would not lay flat, so Weishuhn again used his Taser, causing defendant to go "prone." Defendant would still not place his arms behind his back, so Rickel placed one foot on defendant's back with "downward pressure." She testified that defendant yelled that she was "breaking his f--king back." Defendant eventually put his hands behind his back and was handcuffed. Weishuhn testified that defendant said he was "gonna kill [Weishuhn] . . . and that female . . . ."

Defendant testified that he had gum, not pills, in his mouth and that Weishuhn then grabbed his throat and slammed him down on the wicker chair. Defendant testified that he struggled because this was happening "out of the blue," and when he realized that Weishuhn was reaching for a Taser, defendant pushed it away. Defendant testified that Weishuhn then struck him on the head with the butt of the Taser, splitting his eye open. After that, defendant testified, Weishuhn tased him while Rickel sprayed him with pepper spray.

During a pretrial hearing, the prosecution took issue with defendant's proposed jury instructions that would have provided a defense to the resisting-arrest charges if the jury believed that defendant was using reasonable force to protect himself against the officers' use of excessive force. The prosecution argued that a defendant charged with resisting an arrest has no right to resist physically the arrest where the arrest was lawful as, the prosecution maintained, it was in this case. Defense counsel responded that the special instruction was based on *People v Moreno*, 491 Mich 38; 814 NW2d 624 (2012), which held that a person has the right to resist illegal police conduct. The trial court took the matter under advisement. The trial court read preliminary instructions to the jury at the beginning of the trial, and both parties indicated their express approval. The trial court then addressed defendant's proposed special instruction, ruling that defense counsel could not address it in the opening statement, but depending on the evidence, the defense could renew its motion at the end of the trial. Defense counsel did renew the motion, and after summarizing *Moreno* and the evidence presented in this case, the trial court concluded that the special instruction was not appropriate. Given the arguments made, and contrary to the prosecution's urging to the contrary, we choose to treat the issues raised in this appeal as preserved.

" 'Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion.' " *People v Henderson*, 306 Mich App 1, 3; 854 NW2d 234 (2014), quoting *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Jury instructions are viewed "in their entirety to determine if there is error requiring reversal." *People v Wess*, 235 Mich App 241, 243; 597 NW2d 215 (1999). See also *People v Kowalski*, 489 Mich 488, 501-502; 803 NW2d 200 (2011) (stating that "an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights").

"This Court also reviews de novo the constitutional question whether a defendant was denied her constitutional right to present a defense." *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2003).

"Jury instructions must include all the elements of the charged offense and must not exclude material issues, defenses, and theories that are supported by the evidence." *People v Crawford*, 232 Mich App 608, 620; 591 NW2d 669 (1999). The fact that an instruction "omit[s] an element of an offense, or otherwise misinform[s] the jury of an offense's elements, do[es] 'not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.' " *Kowalski*, 489 Mich at 501, quoting *Neder v United States*, 527 US 1, 9; 119 S Ct 1827; 144 L Ed 2d 35 (1999) (alteration added; emphasis by *Neder*). Rather, a preserved claim of instructional error is reviewed under the harmless-error standard, and requires a "thorough examination of the record" in determining whether, beyond a reasonable doubt, "the jury verdict would have been the same absent the error[;] for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding[,] [a court] should not find the error harmless." *Neder*, 527 US at 19.

In 2002, the Legislature enacted the current version of the resisting-arrest statute, MCL 750.81d,[1] which was interpreted in *People v Ventura*, 262 Mich App 370, 374-377; 686 NW2d 748 (2004), as abrogating the common-law rule that a person may resist an unlawful arrest and removing as an essential element of the crime that the arrest be lawful. However, the Michigan Supreme Court disagreed and overruled *Ventura* in *Moreno*, holding that the Legislature's removal of the statute's reference to the officer's "lawful acts" did not signal an intent to abrogate the common-law right to resist unlawful arrests. *Moreno*, 491 Mich at 46-52.

In the wake of *Moreno*, "the prosecution must establish that the officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under MCL 750.81d." *People v Quinn*, 305 Mich App 484, 492; 853 NW2d 383 (2014). However, and significantly, defendant does not challenge the conclusion that the arrest was valid based on probable cause that he committed domestic violence against his wife. Further, the record demonstrates that there

---

[1] A 2006 amendment was enacted; it is not pertinent to this appeal.

is no reason to doubt that probable cause existed to make the arrest. See *People v Mitchell*, 138 Mich App 163, 167; 360 NW2d 158 (1984) (stating that in determining whether probable cause existed for an arrest, a "reviewing court must determine whether facts available to the officer at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person" committed a crime).[2]

Defendant claims that the arrest was rendered unlawful by the claimed use of excessive force on the part of the police. However, the common-law right to resist an unlawful arrest arises where the initial arrest itself was unlawful. See, e.g., *Moreno*, 491 Mich at 43 (involving an unlawful, warrantless entry into defendant's home); *People v Krum*, 374 Mich 356, 360; 132 NW2d 69 (1965) (considering the defendant's assertion that there was no probable cause to stop and search his car); *Quinn*, 305 Mich App at 493 (addressing whether the officers had a sufficient reasonable suspicion to justify the detention); and *Ventura*, 262 Mich App at 372-373 (addressing whether an officer could make a legal arrest in the defendant's home). To the extent defendant attempts to use nonbinding case law to persuade us that a defendant is allowed to argue "excessive force" as an affirmative defense to a resisting-arrest charge when the initial arrest itself was lawful, we reject this attempt.[3]

Under the circumstances of this case, the instructions fairly presented the issues to be tried and protected defendant's rights.

Affirmed.


/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Jane M. Beckering

---

[2] MCL 764.15(1)(d) indicates that a police officer may arrest a person without a warrant if the officer "has reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days or a felony has been committed and reasonable cause to believe the person committed it."

[3] We note that a defendant is not without recourse if an instance of excessive force occurs during a lawful arrest. Indeed, a defendant may request a prosecutor to press charges against the police or may initiate a civil lawsuit.

-4-