*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
December 3, 2020

v

ROBERT BERNARD COLLINS,

Defendant-Appellant.

No. 348957
Genesee Circuit Court
LC No. 18-042889-FC

Before: REDFORD, P.J., and RIORDAN and TUKEL, JJ.

PER CURIAM.

Defendant appeals by right his convictions by a jury of unlawful imprisonment, MCL 750.349b, assault with intent to do great bodily harm less than murder, MCL 750.84, attempted assault with intent to do great bodily harm less than murder, MCL 750.92(2), felonious assault, MCL 750.82, domestic violence, MCL 750.81(2), and two counts of first-degree criminal sexual conduct (CSC-I) while armed with a weapon, MCL 750.520b(1)(e). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 25 to 40 years each for the CSC-I, unlawful imprisonment, and assault with intent to do great bodily harm less than murder convictions, 140 to 240 months for the attempted assault conviction, 100 to 180 months for the felonious assault conviction, and 93 days for the domestic violence convictions. We affirm.

## I. FACTS

The complaining witness testified at defendant's preliminary examination that, after some marital quarreling, defendant struck her in the face, threatened and cut her with a box cutter, choked her, then wrapped an extension cord around her neck, and issued death threats. When the complainant attempted to flee but fell down, defendant forced her back into the bedroom and sexually assaulted her. Hours later, after defendant fell asleep, the complainant left home and reported to a hospital emergency room.

In jailhouse phone calls between defendant and the complainant, recordings of which were played for the jury, defendant variously attempted to cajole the complainant into agreeing that they had consensual sex, attempted to persuade her not to trust the prosecution, and pressured her not

to testify at his trial. Despite the prosecution's efforts to have the complainant come from Illinois and testify at trial, just before trial she refused to do so.

## II. USE OF PRELIMINARY EXAMINATION TESTIMONY

Defendant first argues that the trial court erred by declaring the complaining witness unavailable for trial and allowing the prosecution to introduce her testimony from the preliminary examination into the record. We disagree.

We review a trial court's evidentiary decisions for an abuse of discretion. *People v Martzke*, 251 Mich App 282, 286; 651 NW2d 490 (2002). "The decision whether to admit evidence lies within the trial court's sound discretion and will not be disturbed absent an abuse of that discretionary authority." *Id*. (citation omitted). This includes a court's determination whether a witness is unavailable for purposes of relying on that witness's earlier testimony. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Kahley*, 277 Mich App 182, 184; 744 NW2d 194 (2007).

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay is not admissible" except as provided by the rules of evidence. MRE 802. The United States and Michigan Constitutions both guarantee criminal defendants the right to confront adverse witnesses. US Const, Am VI; Const 1963, art 1, § 20. Respect for this right is one of the bases for the general rule against admitting hearsay into evidence. See *People v Tanner*, 222 Mich App 626, 632; 564 NW2d 197 (1997).

One of the exceptions to the general prohibition against hearsay provides that when a declarant is unavailable to testify at trial, that declarant's testimony given as a witness at an earlier hearing is admissible if the party against whom it is offered had an opportunity, and similar incentive, to examine or cross-examine that witness on that occasion. MRE 804(b)(1).[1] Another hearsay exception applies to "[a] statement offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." MRE 804(b)(6).

## A. DUE DILIGENCE

For purposes of MRE 804, "availability" includes situations in which the witness "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown." MRE 804(a)(5). The test for due diligence is whether the proponent of the testimony made a "diligent good-faith effort" to produce the witness for trial. *Bean*, 457 Mich at 684. "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether

---

[1] See also MCL 768.26 ("[t]estimony taken at an examination, preliminary hearing, or at a former trial of the case . . . may be used by the prosecution whenever the witness giving such testimony can not, for any reason, be produced at the trial").

diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id.*

In this case, the trial court held a hearing to decide the issue of due diligence. The prosecution introduced evidence that the complainant acknowledged receipt of a subpoena to appear at trial. Testimony of witnesses indicated that the complainant had relocated to Illinois, and that the prosecution and police had remained in touch with her as trial approached, including by way of arranging for hotel accommodations for her, but just before trial she declared her unwillingness to participate. Testimony further indicated that the police and prosecution responded with efforts to locate her, both in Michigan and Illinois, including with help from the police in Illinois to check on the complainant's well-being.

The police officer in charge of the case testified that the complainant telephoned him the evening before, and "stated that she was upset that the police came out there," appeared "nervous, very upset, and stated she was staying with a sister, wouldn't tell you who, and that she would not be coming." The officer added that the complainant indicated that she had been unable to sleep and was otherwise traumatized since being informed of the trial date, but that the officer nonetheless had tried to call her again that morning, and also contacted a local hospital and jail to see if the complainant was at either institution, but to no avail.

The trial court concluded that unavailability had been established under MRE 804(a)(5) for purposes of admitting the complainant's preliminary examination testimony under MRE 804(b)(1) and (6). The record supports the trial court's decision to recognize the complainant as unavailable for trial. Therefore, the trial court did not abuse its discretion.

Michigan law does not require the prosecution to seek to compel the complainant's presence by involving the state of Illinois for assistance. Defendant acknowledges that our Supreme Court, in *People v Serra*, 301 Mich 124; 3 NW2d 35 (1942), held that the prosecution is not obliged to apply to the courts of another state for process to compel production of a witness. Defendant, however, argues that the prosecution had the option to use the procedures set forth in the uniform act to secure the attendance of witnesses from other states in criminal proceedings, MCL 767.91 *et seq.* Although defense counsel initially requested a material witness warrant, over the prosecuting attorney's protestation that "[t]here would have to be a rendition proceeding and things of that nature," and the trial court in fact expressed a willingness to consider issuing one, the record does not indicate that the defense persisted with attempts to obtain compulsory service of process after the complainant's preliminary examination testimony was read into the record, and thus does not indicate that the trial court actually made a decision adverse to the defense in the matter. For these reasons, we conclude that defendant has failed to show that the trial court erred by ruling that the complainant was unavailable under MRE 804(a)(5).

## B. OPPORTUNITY AND INCENTIVE TO CROSS-EXAMINE

Defendant acknowledges that the preliminary examination was a "hearing of the same or a different proceeding" for purposes of MRE 804(b)(1), but argues that defense counsel at the preliminary examination did not fully share in the opportunities or incentives to cross-examine the complainant that would have been present had the complainant appeared at trial. We disagree.

Defendant points out that preliminary examinations and criminal trials involve different evidentiary standards, and cites authority for the proposition that an earlier hearing does not satisfy MRE 804(b)(1) if the two proceedings concerned substantially different issues. Defendant further asserts that defense counsel at a preliminary examination is more interested in furthering discovery than in challenging the reliability of prosecution witnesses. Defendant, however, has not identified any specific aspects of the cross-examination of the complainant at the preliminary examination in this case that indicate that defense counsel less than vigorously cross-examined the complainant to impeach her credibility.

Defendant further asserts that defense counsel at the preliminary examination did not have the benefit of cross-examining the complainant "with regard to new information and strategies developed between the exam and trial." Such argument might indeed be compelling if significant new information or strategic opportunities came to light between the two proceedings. The defense, however, expressed no such concern and defendant on appeal likewise does not identify any such new information or opportunity to support his contention.

Further, defendant offers no argument on appeal to rebut the trial court's conclusion that the challenged preliminary examination testimony was also admissible under MRE 804(b)(6) because defendant, by way of his phone calls to the complainant from jail, had attempted to procure that witness's unavailability. Defendant complains generally that use of the preliminary examination testimony denied him his constitutional right to confront adverse witnesses, but MRE 804(b)(1) specifically conditions use of earlier testimony on the adverse party's having had proper opportunities and incentives to cross-examine when that testimony was given, and MRE 804(b)(6) implicitly recognizes that a defendant whose wrongdoing prevented a witness from appearing thereby forfeits the right to confront that witness. Therefore, defendant has brought no constitutional infirmity to light. Defendant has failed to show that the trial court abused its discretion by declaring the complainant unavailable for trial, or by allowing use of her testimony from the preliminary examination.

## III. OTHER BAD ACTS

Defendant next argues that the trial court abused its discretion by admitting evidence that defendant committed a violent act of criminal sexual conduct in 1990. We disagree.

We review a trial court's evidentiary decisions for an abuse of discretion. *Martzke*, 251 Mich App at 286. This includes a trial court's decision whether to admit evidence of prior bad acts. *Kahley*, 277 Mich App at 184.

MRE 404(b)(1) provides that evidence of other bad acts is not admissible to prove a person's character to show behavior consistent with other wrongs, but such uncharged conduct may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material . . . ." In this case, the prosecution filed a notice of intent[2] to present evidence under MRE 404(b) that defendant committed an earlier sexual assault and defense

---

[2] See MRE 404(b)(2).

counsel filed objections. The trial court heard arguments on the issue in a pretrial hearing, then on the first day of trial ruled that the evidence would be admitted. The following day, the prosecution stated that it had provided defense counsel with a death certificate for the earlier complainant, ST, and asked the court to declare her unavailable and to allow use of that witness's preliminary examination testimony. The transcript of ST's preliminary examination testimony was ultimately admitted by stipulation of the parties.

In that earlier proceeding, ST testified that defendant, whom she knew only as someone who lived across the street who had once asked to borrow her lawnmower, appeared on her porch at 4:00 a.m. one morning, told her to "shut up" when she asked through a closed window what he was doing, then broke her window. ST ran to her kitchen and called the police, but defendant came to a side door near the kitchen, and "started breaking the glass out of that," then reached through that opening to begin unlocking the door, upon which she hung up her phone and ran upstairs and grabbed her rifle. ST testified that the police called back, and from her upstairs bedroom phone, while continuing to hear the sounds of breaking glass, she reported that a man was breaking in. When things seemed to have quieted down, ST entered her hallway, where she saw defendant "more or less crawlin' up the stairs." ST testified that she attempted to raise her rifle, but defendant pulled it away and threw it on the floor, then pushed her into her bedroom and started forcibly disrobing her. Over her protestations, defendant forced her onto the bed, twice struck her in the face, pulled his pants down, forced her to perform fellatio on him, then forced her to endure sexual intercourse. The police then arrived and apprehended defendant.

Defendant argues that this testimony described events too dissimilar to what the instant complainant alleged to be of probative value and that it was extremely prejudicial to him. Although the trial court was presented with a difficult decision, we cannot conclude that the trial court abused its discretion by admitting the evidence. Evidence of prior bad acts under MRE 404(b) is admissible if it is offered for a proper purpose, if it is relevant, and if its probative value is not substantially outweighed by unfair prejudice. *People v Crawford*, 458 Mich 376, 385; 582 NW2d 785 (1998). A proper purpose is one other than establishing the defendant's character to show his propensity to commit the offense. *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

In *People v Mardlin*, 487 Mich 609, 615-616; 790 NW2d 607 (2010) (citations omitted), our Supreme Court explained:

> To admit evidence under MRE 404(b), the prosecutor must first establish that the evidence is logically relevant to a material fact in the case, as required by MRE 401 and MRE 402, and is *not* simply evidence of the defendant's character or relevant to his propensity to act in conformance with his character. The prosecution thus bears an initial burden to show that the proffered evidence is relevant to a proper purpose under the nonexclusive list in MRE 404(b)(1) or is otherwise probative of a fact other than the defendant's character or criminal propensity. Evidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character. Evidence is *inadmissible* under this rule *only* if it is relevant solely to the defendant's character or criminal propensity. Stated another way, the rule is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that

may nonetheless also give rise to an inference about the defendant's character. Any undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the MRE 403 balancing test, which permits the court to exclude relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403. Finally, upon request, the trial court may provide a limiting instruction to the jury under MRE 105 to specify that the jury may consider the evidence only for proper, noncharacter purposes.

In this case, the trial court provided a lengthy explanation for its decision to admit the evidence, and in the process expressed serious discomfort with how admitting such evidence for a proper purpose might nonetheless suggest propensity. The trial court analyzed the evidence, considered defendant's claim that the sex had been consensual, the material issues of defendant's motive, intent, state of mind, and conduct during the commission of the offenses, the victim's state of mind, and defendant's phone calls to the victim, and compared this case with the evidence of the prior bad act. The trial court noted that factual differences existed between the two incidents but found that evidence of the prior bad act had relevance to the issues of motive and intent. The trial court then considered whether the probative value of such evidence would be substantially outweighed by unfair prejudice. It concluded that it would not.

On appeal, defendant argues that ST's account of what defendant did to her was dissimilar in almost every respect to the allegations underlying the instant case. The record reflects that the trial court acknowledged the differences between the two cases but also recognized as a key commonality that both complainants alleged that defendant persisted with sexual aggression despite their protestations and inflicted violent blows to the victims' heads. Although defense counsel did not expressly invoke the defense of consent, she did acknowledge that sexual relations were part of the marital relationship, and, as the trial court noted, the jailhouse telephone calls presented the theory of consent. Defendant protests that "[a]ny motivation or intent regarding a violent sexual assault of a stranger bears no relationship to anything at issue in this case," but does not follow that assertion with any explanation why differing degrees of familiarity with the victims militates against recognizing the similarities in an assailant's conduct during the commission of the same or similar bad acts. Defendant further argues that, according to the instant complainant, by the time the sexual relations took place, defendant's "rage was winding down and she believed that he felt sorry for her." The record, however, reflects that the complainant in this case also testified that she did not resist defendant's sexual advances and assaults out of continuing fear induced by defendant's severe aggression and threats. Although the evidence established that the offenses in this case occurred in relation to a domestic quarrel between husband and wife, such facts do not negate the similarities or preclude admission of the evidence to establish motive, intent, or system of doing an act.

The trial court indicated that the balancing of the probative value of the challenged evidence against its potential for unfair prejudice presented a close question. We agree, and thus bear in mind that a court's decision on a close evidentiary question ordinarily cannot constitute an abuse of discretion. *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000); *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995).

Defendant also argues that reliance on ST's testimony violated his constitutional right to confront adverse witnesses, see US Const, Am VI; Const 1963, art 1, § 20, on the ground that "[i]t is unknown whether the attorney representing [defendant] during the preliminary exam 'had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.'" Defendant, however, has not developed this argument further, except by referring to his similar argument in connection with admission of the complainant's preliminary examination testimony which lacks merit. For the same reasons set forth previously we find no merit to defendant's argument in this regard.

Further, defendant failed to preserve appellate objections. The record, in fact, indicates that the parties stipulated to the admission of the transcript of ST's testimony. Defense counsel's agreement on the record to that action taken below constitutes an affirmative waiver of objections extinguishing his claim of error on appeal. See *People v Carter*, 462 Mich 206, 214-216; 612 NW2d 144 (2000) (affirmative waiver extinguishes appellate objections); *People v Barclay*, 208 Mich App 670, 673; 528 NW2d 842 (1995) (a criminal defendant may not assign error on appeal to something the defendant's lawyer deemed proper at trial). For these reasons, we reject defendant's challenges to the use of ST's testimony regarding the 1990 incident.

## IV. STATEMENTS RELATING TO MEDICAL DIAGNOSIS OR TREATMENT

At trial, defense counsel expressly declined to object to admission of an exhibit containing medical records from the complainant's emergency room visit and also did not object when a physician's assistant read for the jury the notes she contributed to that exhibit that described what the complainant told her. Similarly, defense counsel expressly declined to object to admission of an exhibit consisting of the report resulting from the complainant's sexual assault examination, and also did not object when the nurse and head of a sexual assault response team who performed that examination and prepared the report read for the jury statements therein attributed to the complainant. Both recitations substantially confirmed what the complainant had stated in her preliminary examination testimony with minor variations.

On appeal, defendant asserts that the testimony from those medical practitioners did not constitute admissible hearsay under the exception set forth in MRE 803(4) for "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, of past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment." Defendant also argues that defense counsel provided ineffective assistance for failing to object in this regard.

Defendant relies on *Merrow v Bofferding*, 458 Mich 617, 630; 581 NW2d 696 (1998), where the Supreme Court generally reaffirmed the validity of the hearsay exception for medical records, but held that "the statement in the medical record" that the plaintiff "had a fight with his girlfriend" before suffering the injury for which he sought treatment "was not reasonably necessary for diagnosis and treatment and, thus, falls outside the rationale underlying the exception." Similarly, this Court in *People v DePlanche*, 183 Mich App 685, 690; 455 NW2d 395 (1990), held that "the identity of an assailant cannot be characterized as the 'general cause' of an injury, and such testimony was not of the sort contemplated by the drafters of MRE 803(4)." Accordingly, had defense counsel wished to narrow the scope of the two medical witnesses' testimony to avoid

naming defendant as the assailant, or describing the nature or causes of domestic tensions other than actual violence suffered, counsel may have had some success.[3]  But because the challenged evidence came from medical records, and the two witnesses each suggested that a broad scope of background information had use for medical purposes, the trial court did not commit plain error for not having sua sponte enforced a narrower application of the operative hearsay exception.[4]

Further, defense counsel apparently chose to approach the defense in a way that comported with the now challenged testimony.  A defendant pressing a claim of ineffective assistance of counsel must overcome a strong presumption that counsel's tactics were matters of sound trial strategy. *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999).  "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).  "That in hindsight a strategy was not completely successful does not render it unreasonable and does not render counsel's assistance ineffective." *People v Trakhtenberg*, 493 Mich 38, 63; 826 NW2d 136 (2012).

No issue of mistaken identity existed here, and defense counsel conceded in closing argument that domestic violence took place.  Defense counsel stated: "Obviously something happened.  He admitted to putting his hands on her.  Find him guilty of domestic violence.  He said so and I'm not going to make an excuse for that because it's wrong.  Everything else there's a reasonable doubt about."  It is not ineffective assistance of counsel to concede lesser crimes in hopes that the display of candor will help avoid a guilty verdict on greater ones, *People v Wise*, 134 Mich App 82, 98; 351 NW2d 255 (1984), provided that the defendant has not expressly instructed defense counsel to not concede guilt as to any count.  See *McCoy v Louisiana*, ___ US ___, ___; 138 S Ct 1500, 1507-1512; 200 L Ed 2d 821 (2018).  There is nothing in the record that defendant expressly instructed his counsel to not proceed as he did.

Further, defense counsel did not expressly assert the defense of consent, but rather emphasized reasons to doubt the complainant's credibility.  That the complainant provided nearly identical accounts of the key events in question at the preliminary examination and to the two

---

[3] We note that because the challenged testimony consisted of reading from medical documents that were themselves admitted into evidence, any such endeavor would logically have included moving for redaction of those documents in kind.  Defendant's appellate objections, however, do not include making issue of the admission of those documentary exhibits.

[4] Where a hearsay declarant's statement is testimonial in character, and that declarant does not appear at trial or is otherwise not available to testify, and where the defense has had no opportunity to cross-examine that declarant, those testimonial statements are not admissible even if they fall under an established exception to the general hearsay prohibition. *Crawford v Washington*, 541 US 36, 53-54, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004).  In this case, the prosecution argues that the complainant's statements to the medical providers were not testimonial in nature, but defendant on appeal does not assert that those statements were testimonial.  Because defendant raised no objection regarding testimonial hearsay concerning these two witnesses below, and has not raised any such issue on appeal, defendant has waived the issue and we need not consider it.

witnesses who testified at trial did not undercut that defense posture, but in fact comported with the defense theory that the complainant had manufactured her allegations or otherwise consistently mischaracterized what took place. To the extent that the various accounts did not align perfectly, defense counsel took advantage of the opportunity to highlight those irregularities during cross-examination. Further, pursuing that strategy involved little risk, because, as defendant points out, the challenged testimony from the two medical witnesses was substantially cumulative to the complainant's own testimony, the earlier presentation of which minimized the potential for unfair prejudice resulting from the recitation of her similar accounts as told to two others. See *People v McRunels*, 237 Mich App 168, 185; 603 NW2d 95 (1999) (competent testimony that is duplicative of improperly admitted testimony can militate against the conclusion that a party was harmed by the error). Accordingly, we reject defendant's challenges to the testimony of the two medical witnesses.

## V. INSTRUCTION ON FLIGHT

Defendant argues that the trial court erred by providing the jury with an instruction on a criminal suspect's fleeing or hiding.[5] We disagree.

To the extent that instructional issues involve questions of law, appellate review is de novo, but we review for an abuse of discretion a trial court's determination whether an instruction is applicable to the facts of the case. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). Instructions should cover all material issues and theories that have evidentiary support. *People v Daniel*, 207 Mich App 47, 53; 523 NW2d 830 (1994). "Conversely, an instruction that is without evidentiary support should not be given." *People v Wess*, 235 Mich App 241, 243; 597 NW2d 215 (1999).

In this case, the trial court's instructions to the jury after the close of proofs included the following:

> There has been some evidence that the defendant ran away after the alleged crime. This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true, and, if true, whether it shows that the defendant had a guilty state of mind.

In overruling defense counsel's objections to providing the instruction, the trial court noted that the standard instruction referred to "some," not necessarily abundant or otherwise compelling evidence of flight, and spoke of the efforts the police undertook to find defendant, which "included going to his house and also another address, and trying to find him, and . . . he made himself scarce for three days." Testimony from the police officer in charge of the case supported the trial court's conclusion. The officer stated that, within hours of the assault, the complainant gave permission and provided her keys for the police to enter the home she shared with defendant, where she had left him, and that she also suggested an alternative location for him. When the police promptly reported to the residence, however, defendant was not present. Nor did officers dispatched to the

---

[5] See M Crim JI 4.4(2).

alternative location find him there. The officer in charge stated that he asked dispatch to "ping" defendant's cell phone in hopes of determining its location, but that "they believed it was turned off."

After failing to locate defendant during the first day of the investigation, the officer in charge turned the search over to "people who actually can sit on houses or investigate further through that and that's all they have to do." When an e-mail from the complainant later provided additional information, defendant was apprehended by what the officer called the "Fugitive Task Force." The latter team was sent to the residence and watched it from noon until 3:00 p.m., during which time officers knocked on the door without answer. Then defendant, after not answering their knocking on the door, finally left the residence from the back door.

Defendant argues that neither leaving his home nor returning to it constitutes flight for present purposes. However, the challenged instruction recognizes not only fleeing, but also hiding, as possibly indicating a guilty mind, which permitted the jury to consider that possibility on the basis of only "some evidence." We hold that the evidence that the police could not find defendant at all on the first day, including by responding promptly to a location where he had been left sleeping, and attempting to use cell phone signals, and that the fugitive apprehension team could not find him over the two days that followed until an e-mail tip led the police back to the home where they found him only as he attempted to leave through the back door after three hours of observation during which he declined to respond to knocking at the door, provided a sufficient evidentiary basis that justified the trial court's giving the challenged instruction. Further, the trial court guarded against any possibility that the jury would attach too much significance to the evidence that defendant seemed to be avoiding the police after the subject incident by beginning its instruction with the admonishment that such evidence itself "does not prove guilt." Therefore, the trial court did not err in this regard.

## VI. CUMULATIVE ERROR

Defendant suggests that if no single claim of error itself warrants reversal, such relief is nonetheless required in the face of the cumulative effect of all such errors. See *People v Cooper*, 236 Mich App 643, 659-660; 601 NW2d 409 (1999). Because defendant has failed to bring any error to light, this argument is unavailing.

Affirmed.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Jonathan Tukel