*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SAVANNA ALLYSE FRINKLE,

Defendant-Appellant.

UNPUBLISHED
December 15, 2025
11:58 AM

No. 354101
Jackson Circuit Court
LC No. 18-002412-FC

Before: SWARTZLE, P.J., and O'BRIEN and BAZZI, JJ.

PER CURIAM.

Defendant, Savanna Allyse Frinkle, appeals as of right her jury trial conviction of second-degree murder, MCL 750.317. Defendant argues that she received ineffective assistance because defense counsel promised the jury in his opening statement that it would be instructed on self-defense, only to later abandon the defense during the parties' closing arguments. Defendant further argues that counsel was ineffective by not objecting to a voluntary-manslaughter instruction that the trial court provided. We affirm.

## I. BACKGROUND

At approximately 3:30 a.m. on August 30, 2018, in the city of Jackson, Olivia Caston, Sjiwana Taylor, and defendant walked toward a party store, and on the way, they encountered Marvin Bearden, the victim, walking on the sidewalk on the opposite side of the street. At that time, Taylor had a foldable pocket knife with her. Defendant crossed the street and began arguing with the victim, which led to the altercation becoming physical. Defendant first pushed the victim, and the victim punched back in retaliation. Taylor and Caston also crossed the street and joined the fight. After the victim was knocked to the ground, he attempted to get up and run away, but he only made it 15 feet before falling in the street. Defendant and Taylor pursued and continued to attack the victim. Caston saw Taylor punch the victim with the knife in her hand. At some point, Caston and Taylor walked a short distance away, leaving defendant fighting the victim in the street. A witness driving to work saw defendant and the victim fighting in the intersection and called 911. He later testified that he saw defendant punching the victim as the victim tried to defend himself. The witness saw defendant put the victim in a front headlock and hit him three to

five times in the back of the neck with an object, which the witness later described as a black-handled knife.[1] The victim was later "on all fours" and holding defendant's shorts when defendant jerked away and stabbed the victim in the cheekbone area. Defendant left the victim with the knife stuck in his face. When defendant met up with Taylor and Caston after and was asked where the knife was, defendant responded that she "left that bitch in his face." The victim was taken to the hospital and died from medical complications shortly thereafter.

Defendant was later arrested on the charge of open murder, and Taylor was arrested for aiding and abetting the murder. Defendant and Taylor were tried together before separate juries. In his opening statement, defense counsel argued that either defendant acted in self-defense or defendant was guilty of only the lesser included offense of voluntary manslaughter. When the trial court finalized the jury instructions with the parties, defense counsel argued for the inclusion of a self-defense instruction, and the trial court reluctantly agreed.[2] Nonetheless, in his closing argument, defense counsel did not mention self-defense. Instead, defense counsel focused on the testimony that defendant had the victim in a headlock and presented a theory that defendant could not have caused the injuries to the neck that precipitated the victim's fatal blood clot. Alternatively, defense counsel argued that this was a fight in which defendant had no time to reflect on her actions and that defendant could only be found guilty of manslaughter. The jury found defendant guilty of second-degree murder.

Defendant moved for a new trial on the ground of ineffective assistance of counsel, arguing that defense counsel was ineffective for promising the jury that it would be instructed on self-defense and then abandoning the defense in front of the jury. Further, defendant argued that the jury instruction for voluntary manslaughter, M Crim JI 16.8, was inaccurate and that defense counsel was ineffective for allowing the jury to hear the instruction. An evidentiary hearing was held at which defense counsel testified about his decision to abandon self-defense. Defense counsel testified that he "knew" that he "was not going to get a not guilty" on the basis of self-defense after watching the video of the victim at the scene, seeing the autopsy report and the number of stab wounds, knowing the statements that defendant made at the scene, and knowing that the knife was purposely left in the victim's face.

The trial court denied defendant's motion for a new trial, concluding that any error in the way defense counsel abandoned self-defense did not prejudice defendant because the facts did not support a claim of self-defense. Regarding the jury instructions, the trial court found that defense counsel was not ineffective for allowing the jury to hear both M Crim JI 16.8 and M Crim JI 16.9, with the latter being the instruction for voluntary manslaughter as a lesser included offense of murder. The trial court recognized that the Use Note in M Crim JI 16.9 suggested reading jury instructions 16.8 and 16.9 together for clarification when necessary. The trial court then concluded that it was illogical to say that reading both 16.8 and 16.9, as contemplated, would be confusing for the jury.

---

[1] There was no testimony about how or when defendant obtained the knife from Taylor.

[2] The trial court was skeptical that the instruction was appropriate but nonetheless decided to give it to avoid any potential appellate issues.

Defendant now appeals.

## II. ANALYSIS

"Generally, an ineffective-assistance-of-counsel claim presents a mixed question of fact and constitutional law." *People v Hieu Van Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019) (quotation marks and citation omitted). "Constitutional questions are reviewed de novo, while findings of fact are reviewed for clear error." *Id.*

"To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for defense counsel's errors, there was a reasonable probability that the result of the proceeding would have been different." *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008) (quotation marks and citation omitted). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). A reviewing court should not "substitute [its] judgment for that of counsel on matters of trial strategy, nor . . . use the benefit of hindsight when assessing counsel's competence." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotation marks and citation omitted). "A failed strategy does not constitute a deficient performance." *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). But, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Initially, a court must determine whether the strategic choices were made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (quotation marks, citation, and brackets omitted).

### A. ABANDONMENT OF THE SELF-DEFENSE DEFENSE

Defendant first argues that defense counsel was ineffective in the way in which he raised and then abandoned the defense of self-defense at trial. We disagree.

Although defense counsel abandoned any claim of self-defense, his performance did not fall below an objective standard of reasonableness. At the evidentiary hearing, defense counsel gave several strategic reasons for why he did not pursue a theory of self-defense after the close of proofs. On the basis of the facts of the case, defense counsel testified that his theory was always to advocate for the lesser included offense of manslaughter because this was a continuous fight and defendant had no time to reflect on her actions. Given that the knife was left in the victim's face and given defendant's inflammatory comments about leaving it there, defense counsel was reasonably concerned about losing credibility with the jury by arguing self-defense. Defense counsel also testified that the jury seemed to react poorly when he mentioned self-defense in his opening statement and that the testimony about the headlock caused him to fully abandon self-defense.[3] It is reasonable for defense counsel to adjust his strategy throughout the trial in response

---

[3] Counsel explained that before trial, there had been no reference anywhere of defendant ever holding the victim in a headlock.

to changing circumstances. Although defense counsel's strategy was not successful, that does not render his performance deficient. See *id.*

Moreover, even assuming that defense counsel's performance in withdrawing the defense was deficient, defendant has not demonstrated the requisite prejudice. Simply put, even had defense counsel not withdrawn the defense—and had advocated for its application—there is not a reasonable probability that the jury would have rendered a different verdict.

Under the common law, to excuse what would otherwise be an unlawful homicide, the defendant must present evidence that (1) she honestly and reasonably believed that she was in danger, (2) the danger feared was death or serious bodily harm, (3) the action taken appeared at the time to be immediately necessary, and (4) she was not the initial aggressor. *People v Riddle*, 467 Mich 116, 127; 649 NW2d 30 (2002). In this instance, there is no evidence to show that any of the elements of self-defense were satisfied. Defendant never testified, nor was there any evidence about her state of mind. Additionally, the evidence clearly established that the victim was an unarmed, 63-year old man. There was nothing to suggest that the victim posed a significant danger to then 20-year-old defendant or others, let alone that the circumstances made it "necessary" to resort to lethal force. See *People v Reese*, 491 Mich 127, 144; 815 NW2d 85 (2012) (stating that the touchstone of self-defense is necessity). Lastly, defendant was the initial aggressor. Not only did defendant first push the victim, but after the victim tried to run away and fell, defendant pursued and reengaged him, attacking him again, which ultimately ended with the fatal stabbing. As a result, even if counsel had not abandoned the defense, there is not a reasonable probability that the jury would have accepted the defense.

## B. JURY INSTRUCTIONS

Defendant also argues that defense counsel was ineffective for failing to object to M Crim JI 16.8. We again disagree.

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against [her]." *Riddle*, 467 Mich at 124. Instructions are reviewed as a whole and "must cover each element of each offense charged, along with all material issues, defenses, and theories that have evidentiary support." *People v Wess*, 235 Mich App 241, 243; 597 NW2d 215 (1999). Instructions need not be perfect; they need to only fairly present the issues and sufficiently protect the defendant's rights. *People v Katt*, 248 Mich App 282, 310; 639 NW2d 815 (2001), aff'd 468 Mich 272 (2003).

The trial court instructed the jury on voluntary manslaughter using M Crim JI 16.8 and 16.9. The Use Note of M Crim JI 16.8 states that M Crim JI 16.9 should be used "[if] instructions on voluntary manslaughter are being given as a lesser offense to murder." However, in the present case, the trial court read both instructions.

Consistent with M Crim JI 16.8,[4] the trial court instructed the jury on the essential elements of voluntary manslaughter as follows:

> As I've indicated [j]ust a moment ago, the defendant is charged with the crime of second degree murder. You may also consider the lesser charge of involuntary [sic] manslaughter. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt: First, that the defendant caused the death of [the victim], that is, that [the victim] died as a result of being stabbed or for medical complications thereafter.
>
> Second, that the defendant had one of these three states of mind: she intended to kill or she intended to do great bodily harm to [the victim], or she knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of her actions.
>
> Third, that the defendant caused the death without lawful excuse or justification.

The trial court then instructed the jury consistent with M Crim JI 16.9[5] on the difference between murder and voluntary manslaughter as follows:

---

[4] M Crim JI 16.8 states the following:

> (1) **[The defendant is charged with the crime of / You may also consider the lesser charge of\*]** voluntary manslaughter. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> (2) First, that the defendant caused the death of [name deceased], that is, that [name deceased] died as a result of [state alleged act causing death].
>
> (3) Second, that the defendant had one of these three states of mind: **[he / she]** intended to kill, or **[he / she]** intended to do great bodily harm to [name deceased], or **[he / she]** knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of **[his / her]** actions.
>
> **[(4) Third, that the defendant caused the death without lawful excuse or justification.]**

The Use Note for this instruction is connected to the asterisk in ¶ 1 and provides:

> \* If instructions on voluntary manslaughter are being given as a lesser offense to murder, use M Crim JI 16.9.

[5] M Crim JI 16.9 provides:

The crime of murder may be reduced to voluntary manslaughter if the defendant acted out of passion or anger brought about be adequate cause and before the defendant had a reasonable time to calm down. For manslaughter the following two things must be present: First, when the defendant acted her thinking must be disturbed by emotional excitement to the point that a reasonable person might have acted on impulse without thinking twice from passion instead of judgment.

This emotional excitement must have been the result of something that would cause a reasonable person to act rashly or on impulse. The law does not say what things are enough to do this, this is for you to decide.

Second, the killing itself must result from this emotional excitement. The defendant must have acted before a reasonable time had passed to calm down and returned to reason. The law does not say how much time is needed, that is for you to decide. The test is whether reasonable time passed under the circumstances of this case.

Specifically, defendant argues that counsel's failure to object to M Crim JI 16.8 constituted ineffective assistance because the instruction erroneously includes the element of malice and does not provide the jury any instruction on how to differentiate voluntary manslaughter from second-degree murder. Further, defendant argues that the reading of M Crim JI 16.8 and 16.9 together improperly gave the jury the impression that it had to find both malice and the provocation negating malice. We disagree.

The elements outlined in M Crim JI 16.8 are consistent with our Supreme Court's understanding of manslaughter. As that Court has stated, "both murder and voluntary

---

(1) The crime of murder may be reduced to voluntary manslaughter if the defendant acted out of passion or anger brought about by adequate cause and before the defendant had a reasonable time to calm down. For manslaughter, the following two things must be present:

(2) First, when the defendant acted, [his / her] thinking must be disturbed by emotional excitement to the point that a reasonable person might have acted on impulse, without thinking twice, from passion instead of judgment. This emotional excitement must have been the result of something that would cause a reasonable person to act rashly or on impulse. The law does not say what things are enough to do this. That is for you to decide.

(3) Second, the killing itself must result from this emotional excitement. The defendant must have acted before a reasonable time had passed to calm down and return to reason. The law does not say how much time is needed. That is for you to decide. The test is whether a reasonable time passed under the circumstances of this case.

manslaughter require a death, caused by defendant, with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *People v Mendoza*, 468 Mich 527, 540; 664 NW2d 685 (2003); see also *People v Townes*, 391 Mich 578, 589; 218 NW2d 136 (1974). Accordingly, M Crim JI 16.8 accurately describes the essential elements of manslaughter. Defendant is correct that what distinguishes murder from manslaughter is malice, which in the case of voluntary manslaughter, is "negated by the presence of provocation and heat of passion." *Mendoza*, 468 Mich at 540. M Crim JI 16.8 may not explain this difference, but defendant concedes that M Crim JI 16.9 does, and this instruction was also given to the jury.

Defendant's argument that the reading of both instructions could have left the jury with the impression that it had to find both malice and the factors that negate malice to convict defendant of the lesser included offense of voluntary manslaughter is not persuasive. Significantly, the jury instructions do not use the word "malice." M Crim JI 16.8 provides that, to find defendant guilty of voluntary manslaughter, the jury had to find that defendant (1) caused the death of the victim; (2) had the intent to kill, cause great bodily harm, or knowingly created the risk of such harm; and (3) caused the death without justification or excuse. M Crim JI 16.9 then lays out the circumstances under which murder may be reduced to manslaughter because of provocation and heat of passion. Contrary to defendant's position, these instructions when read together are not inconsistent. Further, the Use Note of M Crim JI 16.9 explicitly suggests that reading *both* instructions may be helpful in some cases. Accordingly, there was no error with the trial court providing both instructions, and defense counsel was not ineffective for failing to object to M Crim JI 16.8. For the same reasons, defendant cannot prove that there was a reasonable probability that a different result would have occurred had counsel objected to M Crim JI 16.8.

Affirmed.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Mariam S. Bazzi